## Henry R. Worthington v. Schuylkill Electric Railway Company, Appellant.

*Corporations—Unauthorized act of president—Notice—Estoppel—Contract.*

A construction company which had received the full consideration for its contract with a railroad company gave a note for the purchase of material delivered by it to the railroad company; the note was indorsed by the president of the railroad company, without authority. *Held,* that the payee plaintiff having taken the note without inquiry as to the president's authority, must be deemed in law to have taken it with notice. Such a condition does not bring the case within the accepted rule that where a corporation receives and retains the benefits of the unauthorized action of its president it is, ordinarily, estopped to deny his authority.

Argued Oct. 19, 1898. Appeal, No. 66, Oct. T., 1898, by defendant, from judgment of C. P. No. 4, Phila. Co., on verdict for plaintiff. Before RICE, P. J., REEDER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Reversed. Opinion by RICE, P. J. SMITH, J., dissents.

Assumpsit on promissory note.

It appears from the record that this action was brought on a promissory note of the Philadelphia Construction Company, indorsed by the Schuylkill Electric Railway Company, Charles H.

Barratt, president, to which an affidavit of defense was filed denying any authority on the part of said officer to make such indorsement. There was evidence tending to show that no authority existed in the president to indorse such a note either by the by-laws or by resolution of the board of directors. It was shown that the pump which was the article purchased by the promissory note in suit was in the possession of the Schuylkill Electric Railway Company. The plaintiff offered in evidence the note on which suit was brought, signed by the Philadelphia Construction Company, and indorsed by Charles H. Barratt, president of the Schuylkill Electric Railway Company. The plaintiff called Mr. Barratt, the former president of the defendant company, who admitted the indorsement to be his writing. The defendant offered evidence to show that the pump was furnished under a contract between the two companies by which all materials were to be furnished by the former for stock and bonds which were duly delivered.

Defendant submitted the following points, which were refused by the trial judge :

[1. That the jury must find a verdict for the defendant, because the plaintiff has shown no authority on the part of the president of defendant corporation to indorse the said note, nor any value received by said defendant corporation by reason of such indorsement.] [5]

[2. That under all the evidence in the case the verdict must be for the defendant.] [6]

Verdict and judgment for plaintiff for $382.64. Defendant appealed.

*Errors assigned* among others were (1) in admitting the note upon which suit was brought without any evidence of authority on the part of the president of the defendant company to indorse the same. (5) In declining to affirm defendant's first point, reciting same. (6) In declining to affirm defendant's second point, reciting same.

*Jno. J. Ridgway*, for appellant.—The plaintiff had notice in the affidavit of defense that the authority of the president to indorse the note was denied, and proof of that authority should have been submitted before its admission or at least afterwards : Bank v. Henning, 171 Pa. 399.

117, (1899).]        Arguments—Opinion of the Court.

The trial judge laid down the law, in the beginning of his charge, in accordance with the Millward Cracker Co. case, decided in 1894 by our Supreme Court (161 Pa. 157), but was misled by the statement in the opinion (p. 170) that where the corporation receives the benefits of an unauthorized action of its officers, it is liable, and he left to the jury the question as above, when in fact, there was no evidence in this case of any benefit in the sense in which the expression is there intended.

The fifth and sixth assignments of error are to the refusal of the court below to give binding instructions to the jury in favor of defendant.

If the law be correctly interpreted according to the Cracker Co. case, supra, such instructions should have been given. It was never intended that the force of that decision could be juggled away under an inference of benefits received as was done in the present suit. The trial judge should have defined "benefit" to the jury and not left it to be inferred, which was a great injustice to the defendant below.

*S. G. Birney*, with him *Francis G. Taylor*, for appellee.— The fact that Barratt was at the time president of the defendant company raised an implication of authority to make the indorsement and coupled with the note that was offered in evidence made out a prima facie case. The evidence also shows that the electric company did benefit by the indorsement. The defendant would not have gotten the pump without the indorsement; the consideration, directly moving to the indorser for the indorsement, was the delivery of the pump.

OPINION BY RICE, P. J., April 17, 1899:

The Philadelphia Construction Company entered into a contract with the Schuylkill Electric Railway Company in which the former agreed to erect, construct and equip the extensions of the electric road of the latter company in strict accordance with the terms and conditions of the specifications annexed to and made part of the contract, for the consideration of "$500,000 par value, in stock, and $500,000, par value in six per cent gold bonds of said party of the second part," which was to be accepted "in full payment and satisfaction of this contract." The specifications of "the power house equipment" included "all necessary pumps."

The construction company, through its president, applied to the plaintiff for the purchase of two pumps, and the sale was made under the following circumstances, as detailed by the plaintiff's agent who made it: " The pumps were sold to the Philadelphia Construction Company, Mr. M. W. Hess president, and before the sale was effected, Mr. Hess told me that in making payment for those pumps he would pay for it with a note, and that he would give us a satisfactory indorser, and before we accepted and before we credited the payment from him, we were advised by him that the Schuylkill Electric Railway Company would be the indorser for the note. Upon that representation and the signing of the notes by Mr. Hess, and the indorsement of Mr. Barratt, we accepted them as payment for the pumps." The pumps were duly delivered and one of them is in use in the power house at the present time, the other having been returned through an arrangement made between the plaintiff and the construction company.

It is fairly to be inferred from the testimony of Mr. Barratt who was president of the defendant company at the time, that he knew of this understanding between the plaintiff and the president of the construction company before he placed the company's indorsement on the note, and that his purpose in indorsing the note was to faciliate the sale. It should be observed, however, in order to prevent confusion, that the sale was to the construction company and not to the defendant company. It is not intimated that any of the parties regarded it otherwise.

The question is as to the liability of the latter company upon the indorsement.

It is not alleged that there was any by-law, or resolution of the board of directors which authorized the president of the defendant company to indorse the notes of the construction company given for purchases made by the latter. The uncontradicted evidence shows affirmatively that he had not such authority. It is claimed, however, that the defendant is liable for certain reasons which will be considered in the order in which they were presented by the plaintiff's counsel.

The contention that the defendant company was paying bills of the construction company by advancing them cash through the medium of a trust company, is not sustained by

the evidence. All that the evidence upon this subject distinctly shows is, that the bonds and stock called for in the contract between the two companies were delivered to the construction company, and deposited with a trust company, and that upon these bonds and stock, advances were made by the trust company to the construction company to enable them to pay their bills. I quote all of the testimony upon that subject: "Q. At the time that this note was given was your company indebted to the construction company? A. The Schuylkill Electric Railway Company had delivered to the construction company all the bonds and stock under that contract. Q. There were then unsettled balances? A. Under the contract of the Electric Railway Company with the Philadelphia Construction Company the railway company delivered a certain amount of bonds and stock to the construction company. The bonds and stock were deposited with the trust company. That trust company made advances on those stocks and bonds, and that is the way the construction company got their money to pay their bills." It is impossible to see how it could be found as a fact from this evidence that the construction company was a mere figurehead and that the defendant company was paying the bills through the medium of a trust company. The truth is, that the defendant company had discharged its obligation to the construction company when the bonds and stock called for in the contract were delivered, and so far as we can discover there is nothing in the evidence to impeach the bona fides of the transaction.

Nor can it be contended, that the defendant was bound by this indorsement by a "course of dealing." True the president of the defendant company had indorsed notes given by the construction company to other parties, and these had been paid. How or by whom they were paid does not appear. It does not appear that they were paid by the defendant, and there is no evidence that any of the officers or directors, excepting the president, knew of these transactions. But the important fact is that the giving of this note was not in accordance with a course of dealing with the plaintiff. So far as appears it was the first and only note he had received thus indorsed. As between him and the defendant a course of dealing had not been established from which he had a right to presume that when the president indorsed this note he was acting within the scope of his author-

ity. This distinction was recognized in Millward-Cliff Cracker Co.'s Estate, 161 Pa. 157, and in consequence a large number of claims based on notes made or indorsed by the treasurer, but not countersigned by the president as required by the by-laws, were rejected.

It is argued that where a corporation receives and retains the benefits of the unauthorized action of its president, it may be and ordinarily is, estopped to deny his authority, and upon this principle the court submitted to the jury the question whether the defendant had received any benefit from this unauthorized indorsement. We do not dispute the principle. It has been applied or recognized in many cases amongst which—to illustrate its scope—may be mentioned: Dougherty v. Hunter, 54 Pa. 380; Penn. Natural Gas. Co. v. Cook, 123 Pa. 170; Manhattan Co. v. Phalen, 128 Pa. 110, 119; MacGeorge v. Chemical Co., 141 Pa. 575; Millward-Cliff Cracker Co.'s Estate, supra; Ins. Co., v. Brownback & Co., Lt'd., 1 Pa. Superior Ct. 183. The point upon which we differ from the learned court below is as to the applicability of the general principle to the facts as disclosed by the plaintiff's evidence. We cannot agree that there was any evidence that the defendant received a "benefit" from the indorsement within the meaning of the rule recognized in the above cited and other cases. For example, the services of the broker in the case of Twelfth Street Market Co. v. Jackson, 102 Pa. 269, were remotely instrumental in bringing about the reduction of the ground rent, and indirectly the company received a benefit from them, it was held, nevertheless, that it was not bound by the unauthorized act of the president in employing him. We refer to this case to show, that not every indirect benefit, however remote, is meant in the statement of the general rule under consideration. Unquestionably it was a benefit to the defendant in the case at bar to have the pump, but if that is the sole test, then the president could have bound the company for the entire cost of the construction of the road, by indorsing the notes of the construction company, or otherwise guaranteeing the payment of the bills the latter contracted. Certainly this could not be so. It should be constantly kept in mind that the pump for which the note was given, was not delivered to the defendant under a contract with it, but to the construction company, which purchased it, and put it upon the

defendant's premises, in fulfilment of its contract. The defendant received the benefit, which it contracted for, but for this it has paid the party with which it contracted. Possibly the plaintiff would not have delivered the pump to the construction company except upon condition that the latter would give its note with an indorser, but there is no evidence that the only indorser he would accept was the defendant, nor that this latter condition, even if the plaintiff had insisted upon it, was made known to the defendant or even to its president. No communication whatever took place between the plaintiff and the defendant. The construction company, through its president, simply offered the plaintiff to obtain the indorsement of the defendant company upon the note to be given for the price of the pump sold to the construction company by the plaintiff, and the latter accepted the offer without inquiry as to the authority of the president of the defendant company to indorse the note or as to the business arrangements between the two companies. How then can it be held that the defendant received a benefit from the transaction which estops it to deny the authority of the president to bind it by the guaranty of another's debt? We do not see how it could be so held without assuming contrary to the evidence, that the construction company was the mere agent of the defendant and ignoring the fact that the consideration for the note moved directly to the former and not to the latter company. As the majority of the court view the case, the president undertook to pledge the credit of the company as security for the debt of its contractor, which contractor had received the full consideration for the work and material it was to do and furnish; this was beyond his authority to do; and the plaintiff who took the note for the debt of the maker without inquiry as to the president's authority, must be deemed in law to have taken it with notice. Therefore the defendant's points should have been affirmed. This conclusion renders it unnecessary to pass upon the question of evidence raised by the first assignment of error. But see Bank v. Henning, 171 Pa. 399, and City Electric R. Co. v. First National Bank, 31 L. R. A. 535.

The fifth and sixth assignments of error are sustained and the judgment is reversed.

SMITH, J., dissents.