## The Wayne Title and Trust Company *v.* The Schuylkill Electric Railway Company, Appellant.

*Corporations—By-laws—Check—Estoppel.*

A check drawn by the treasurer of a corporation without a formal order of the directors as required by the by-laws, and indorsed by the president, is good in the hands of a person without knowledge of the by-laws, where it appears that the president had deposited in the company's account a sum out of his own moneys sufficient to meet the check, and the company had appropriated this sum to other corporate purposes.

Argued Feb. 14, 1899. Appeal, No. 331, Jan. T., 1898, by defendant, from judgment of C. P. Schuylkill Co., March T., 1896, No. 366, on verdict for plaintiff. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit upon a check. Before BECHTEL, J.

The Schuylkill Electric Railway Company operates a street electric railway in and about Pottsville.

On September 11, 1895, James Goodwin was its president, William A. Barrett, its treasurer, and Charles H. Barrett, a brother of said William A. Barrett, one of its directors.

The facts appear by the opinion of the Supreme Court.

At the trial plaintiff, for the purpose of showing the appropriation by the defendant of the deposit of $5,300, offered in evidence.

"Order No. 1,581. Pottsville, Pa., September 18, 1895. Mr. William A. Barrett, Jr., treasurer Schuylkill Electric Railway Company, of Pottsville. Pay to C. H. and W. A. Barrett, Jr., or bearer, $3,144.23 in settlement bills, dated, on account loan. Signed, James Goodwin, president. Jesse Newlin, secretary. $3,144.23.

"No. 1,582. Pottsville, Pa., September 18, 1895. Mr. William A. Barrett, Jr., treasurer, Schuylkill Electric Railway Company, pay to J. B. Hoelman $2,524 in settlement of bills, dated, pay roll (in stub) up to September 16, 1895. Indorsed, J. B. Hoelman. $2,200.24.

"Entry in Bank Book No. 3, Government National Bank of Pottsville.

| | |
|---|---:|
| September 12, . . . . . . | $1,418 00 |
| September 12, . . . . . | 1,721 61 |
| September 18, Corn Exchange National Bank, | 5,300 00" |

Defendant objected to the offer because the testimony is incompetent, immaterial and irrelevant; that it neither shows nor tends to show that any portion of the proceeds of the check in suit was received by this company; that the evidence proposed to be given merely shows that one James Goodwin deposited $5,300 in the Corn Exchange Bank, which was afterwards credited in the Government Bank to the Schuylkill Electric Railway Company, and whatever relation or claim that might give James Goodwin, it gave this plaintiff no right of action upon this check.

The Court: Taken in connection with the testimony of Goodwin, that the money was sent here for the purpose of paying this check, we think it would be evidence.

Admitted. Defendant excepts. Bill sealed. [5]

Plaintiff was permitted, under objection and exception, to show that the defendant was indebted to C. H. Barrett to the amount of the check the day the check was issued and put in his possession, as bearing upon the question of the consideration for the check on September 11.

Defendant excepts. Bill sealed. [7]

Plaintiff's points and the answers thereto were as follows:

1. The uncontradicted evidence of the plaintiff shows that the defendant company received the sum of $5,300, the amount

of the check in controversy, which sum was deposited (through the instruction of Mr. James Goodwin from his private funds), in the Government National Bank of Pottsville, on September 17, 1895, to pay the protested check in controversy, which sum of money was used by the defendant company for other purposes than paying the check in controversy, and it will not avail the defendant company to allege that it received no value for the check, and the check having passed into the possession of the plaintiff for value the verdict of the jury must be for the plaintiff for the amount of the check with interest thereon. *Answer:* What the facts are you must ascertain, whether or not the check passed to the plaintiff for value and without notice of any alleged irregularity or want of consideration is like all other questions of fact for your finding, but, if you find the facts to be as here stated and claimed to be, we affirm this point, and say in case of such finding you should render a verdict for the plaintiff. [1]

2. The drawing of the check by William A. Barrett, Jr., as treasurer of the defendant company, was within his power as treasurer of said company, and it being regular on its face, there was nothing to put the plaintiff company on its guard as to any fraud, if any fraud was committed, and the plaintiff having given full value for the check, as a bona fide holder for value, the verdict of the jury must be for the plaintiff for the amount of the check, with the interest thereon. *Answer:* Whether or not William A. Barrett, Jr., as treasurer of the Electric Railway Company, possessed the right to draw the check in question depends upon the question of what the purpose was for which it was drawn, and that is a question of fact for you, as are the other questions of fact mentioned in this point. If you find the check was drawn in payment of a debt due by the defendant, or that the defendant received the amount of the check in cash for the purpose of paying the same therewith, and failed to do so, the defendant would be liable therefor, and the plaintiff would be entitled to your verdict. In addition we say if you find the facts stated in this point to be as herein stated then we affirm it, and say you should then render a verdict for the plaintiff for the amount of the check, with interest and protest. [2]

Defendant's point and the answer thereto were as follows:

Under all the evidence in the case the verdict of the jury should be for the defendant. *Answer :* These two points are exactly the opposite of each other. One asks us to say that you must find a verdict for the plaintiff. The other asks us to say you must find a verdict for the defendant. We decline to say either thing to you. We say we decline to so instruct you, but leave the case with you for your finding, under all the evidence, and our instructions as to the law. We have already indicated our intention to have you say what the verdict shall be, and we see no reason now for changing it. [3]

The court charged in part as follows:
[If you find, after careful consideration, that the check in suit was given in payment of a debt due by the defendant, or that about the time it was given the defendant received the sum of $5,300 in cash as the consideration thereof, and has not paid the said check therewith, then, in case of either or both of such findings, you should render a verdict for the plaintiff for the amount thereof, with interest from the time it thus became due and payable to this date, and we so say to you. As you determine these questions so your verdict will necessarily have to be.] [4]

Verdict and judgment for plaintiff for $6,152.45. Defendant appealed.

*Errors assigned* were (1–4) above instructions, quoting them; (5, 7) rulings on evidence, quoting the bill of exceptions.

*Guy E. Farquhar*, with him *R. H. Koch*, for appellant.—The by-laws of a corporation, upon their adoption, become written into the charter and put parties who deal with the corporation upon notice in treating with the officers of the corporation as to the extent of the power and agency of such officers; and this, whether the specific by-law has been brought home to them or not: Millward-Cliff Cracker Co.'s Est., 161 Pa. 167.

A board of directors of a corporation has no power to make or amend the by-laws unless authority so to do be especially given it by the charter: United Fire Assn. v. Benseman, 4 W. N. C. 1.

The case of Gunster v. The Scranton Illuminating, Heat and

Power Company, 181 Pa. 327, does not in any way modify the Millward-Cliff Cracker Company case, for the reason that the course of dealing between the bank and the Heat and Power Company showed that the making of the notes in question was within the power of the treasurer, and the bank gave to the defendant the money on the notes, whereas there is no evidence whatever that the appellant ever gave its treasurer power to draw money, or sanctioned any such course of dealing with the plaintiff or that it ever received one penny of the proceeds of the check in suit.

*S. H. Kaercher,* with him *D. W. Kaercher* and *Melick & Potter,* for appellee.—Under the rule in Fleming's Executors v. McClain, 13 Pa. 178, the plaintiff had a right to assume that the check in suit had been given for a proper consideration.

Not only did the defendant receive a valuable consideration for the check by reason of the credit it received on its account with the Barretts, but in addition thereto it received an actual cash consideration by the deposit of funds by Goodwin, its president, to meet this very check. The check itself is prima facie evidence of the payment of a debt: Fleming's Executors v. McClain, 13 Pa. 178; McGeorge v. Chemical Co., 141 Pa. 575; Bank v. Morgan, 165 Pa. 205; Lancaster Co. National Bank v. Garber, 178 Pa. 97; Laber v. Steppacher, 103 Pa. 81.

OPINION BY MR. JUSTICE DEAN, April 24, 1899:

The plaintiff brought suit against defendant on a check of which this is a copy:

"POTTSVILLE, PA., Sept. 11, 1895.

" The Government National Bank of Pottsville, Pa.,

"Pay to W. W. Hess or order Fifty-three hundred dollars.
$5,300.      SCHUYLKILL ELECTRIC RAILWAY CO.,
    " W. A. BARRETT, JR.,

" Treasurer."

This check was by Hess indorsed over to James Goodwin, who indorsed it to " The Wayne Title and Trust Company," the plaintiff. On the same day Goodwin checked out the full amount. When presented for payment, the Pottsville bank refused to honor it, and it was duly protested. Thereupon, plaintiff, the holder,

brought suit against defendant, the drawer. On the day of the protest, Goodwin, being informed of that fact, deposited in the Corn Exchange National Bank of Philadelphia, the sum of $5,300, instructing it to forward the amount to the Pottsville bank to be applied in payment of the check. On the same day the Corn Exchange bank telegraphed the Pottsville bank that $5,300 had been deposited to the credit of the drawer, "The Schuylkill Electric Railway Company." Also on the same day, C. H. Barrett, a director, and one of the active managers of the railway company, telegraphed Hoelman, the bookkeeper of the company, that the money had been deposited for payment of the protested check, and a credit for that amount was thereupon entered by the bookkeeper upon the cash book of the railway company. The next day, on receiving notice by letter from the Corn Exchange bank of the deposit, the Pottsville bank credited the railway company on its books with the $5,300, and at request of C. H. Barrett, director, the credit was duly entered on the bank book of the railway company. But the latter refused to have the check paid. At the trial, its defense was based on the absence of authority in the treasurer to draw the check without a formal order of the board of directors. A by-law of the company declared that the treasurer should not pay out money except by the authority of the board, and that all orders should be signed by the secretary and president, or in the absence of the president, by the vice president; the check had been delivered to C. H. Barrett, director, in payment, as was averred by plaintiff, of a debt due him from the railway company, and Hess was made payee merely for convenience. Defendant alleged that no consideration passed from Barrett to the company, and that the check was not only irregularly but fraudulently issued.

At the trial in the court below, there was considerable evidence on both sides, bearing on the question as to whether the railway company was indebted to Barrett in the amount of the check when the treasurer issued it to him, and consequently, whether there was a consideration to support it. The fact was scarcely denied by defendant, that the indorser, Goodwin, out of his individual funds, deposited in the Corn Exchange bank $5,300 to the credit of the railway company to meet the check, and that the company took this money and applied it to other purposes.

The court below submitted the evidence to the jury, instructing them, that if the company received no consideration for the check from Barrett, to whom it was delivered, at or before the delivery, nor afterwards, they should find for defendant; but if, on the other hand, they should find the check was given by defendant for a debt owing by it to Barrett, or if defendant received the $5,300 in cash as the consideration therefor, then they should find for plaintiff. The verdict was for plaintiff in the amount of the note with interest, and we now have this appeal by defendant, who assigns seven errors; the first four in substance allege, that the court erred in submitting the evidence to the jury as already noticed. It is argued, the suit was founded on the check as showing defendant's liability; if it was not liable on the check, it was not liable at all; as the check was issued in the face of the prohibition of the by-law, there was no corporate liability, whatever may have been the individual liability of the agent who issued it without authority from his principal. The rule of law relied upon to sustain this argument is a very familiar one, and is thus restated by this Court in Millward-Cliff Cracker Co.'s Est., 161 Pa. 167:

" The by-laws of a corporation, upon their adoption, become written into the charter and put parties who deal with the corporation upon notice in treating with the officers of the corporation as to the extent of the power and agency of such officer; and this whether the specific by-law has been brought home to them or not."

Undoubtedly, this is the law, and if Barrett, the first holder of the check, excluding all the subsequent transactions relating to it, had demanded payment from the company, and had been refused because of want of authority in the treasurer to issue it in violation of the by-law, the argument would be to the point, and perhaps would convict the court below of error. But the very case cited, holds, that where the corporation receives the benefit of the unauthorized act of its officer, it is bound. Here, the case turned, not on the authority of the treasurer to issue the check, but on whether the company, as between the parties to this suit, is in equity estopped from denying such authority.

The jury has found as a fact, on ample evidence, that the check was not fraudulently issued; that the company was really indebted to Barrett in the amount of it when it was delivered

to him; but assume, for the sake of the argument, the fact to be otherwise, then how stands the case? A check of defendant company, on its face regular, is presented for deposit by the president of the company, who indorses it; the bank receiving it has no connection with the railway company, nor so far as appears, any knowledge of its by-laws; the treasurer has formally signed it; the president formally indorses it; here are two of the highest officers of the company, each representing to the bank, in effect, that the check is an authorized corporate obligation; the bank immediately, on the faith of it, parts with its money. If there was fraud in its issue, it is not pretended the bank had knowledge of such fraud; nor is it pretended that Goodwin, the indorser, had such knowledge; so that the most that can be attributed to plaintiff, is a neglect to examine the minutes of the company to ascertain whether two of its prominent officers were lying; this is not sufficient to warrant an imputation of guilt, and the bank can with clean hands invoke the doctrine of equitable estoppel against defendant, if the latter has received the full benefit of the unauthorized act after the deposit of the check.

The fact is established, beyond controversy, that Goodwin, the indorser of the check, who was also bound to the bank, took from his pocket the money to meet it, and placed it to the credit of the railway company; that company immediately proceeded to appropriate it to other purposes; paid over $2,200 out in wages to its employees, and with the balance, paid an overdraft in bank. This was a wholly unauthorized perversion of Goodwin's money; it had been deposited for a specially designated purpose, that is, to meet the check held by the bank. Clearly, by such action, the railway company received the full benefit of the unauthorized act of its treasurer; whatever fraud may have been committed by Barrett, the railway company lost nothing by it. If ever an unauthorized act of an agent could be ratified and adopted by a principal, it was so ratified and adopted here. It no longer remained a question of authority in the officer under the by-laws, but in what position had the principal, by its subsequent conduct, placed itself? It is not alleged, that the by-laws required board action, before it could accept money, or before it could pay the wages due its employees. We are clearly of the opinion, that the corporation, by accept-

ing and using Goodwin's money deposited to meet the check, is estopped from denying the treasurer's authority to issue it.

The remaining assignments are to the rulings of the court on the admission of evidence. In view of what we have said on the main question, all these rulings were correct, for the evidence related directly to the facts which plaintiff had the right to prove.

The judgment is affirmed.