# Louchheim, Appellant, v. Somerset Building & Loan Association (No. 1).

*Corporations—Building associations—Officers—By-laws—Notice.*

The by-laws of a corporation upon their adoption become written into the charter, and all persons whether strangers or members who deal with the corporation are bound to take notice of the powers and duties as defined in the by-laws, of those officers of the corporation with whom they deal. This rule is particularly applicable where a party dealing with the corporation is a member, and has in his actual possession a copy of the by-laws.

A building association is not chargeable with payments of dues made to the secretary at places other than stated meetings of the association, where it appears that the secretary had no authority either express or implied to collect dues, and it also appears that the by-laws provided that dues should be paid at stated meetings of the association and designated the persons who were to receive them. In such a case the association is not estopped because during a period of years and in another series and with the knowledge of the directors, the member had paid his dues to the secretary without attending the meetings, which under the by-laws he was not required to attend ; nor is the association estopped because of the failure of several auditing committees to discover the falsifications which the secretary had made in the roll book to cover up his fraud.

A member of a building association is bound to know whether he is in arrears, and has no standing to complain that the directors did not forfeit his stock at the expiration of the period fixed by the by-laws for which he was in arrears, or notify him of that which it was his duty to know.

The first payment made by a person joining a building association fixes his status in the series then being issued, and that status is not affected by the act of the secretary in transferring the stock to another series for his own fraudulent purposes.

Where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss, shall not throw it on the other.

Argued Oct. 14, 1903.  Appeal, No. 49, Oct. T., 1903, by plaintiff from order of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 440, sustaining exceptions to report of referee in case of Walter C. Louchheim v. Somerset Building and Loan Association.  Before Rice, P. J., Beaver, Orlady, Smith, Porter, Morrison and Henderson, JJ.  Affirmed.

Exceptions to report E. Hunn Hanson, referee.

The referee found the facts to be as follows :

1. On April 3, 1877, under the act of assembly approved April 29, 1874, the Somerset Building and Loan Association was incorporated, and on May 23, 1892, it legally came under the provisions of the act of assembly approved April 10, 1879. . The members of the association numbered between 250 and 300.  Each six months it issued stock, consecutively numbered and called series.  A deposit, or as it was frequently called, a pass book was issued to subscribers to the stock, on the first pages of which were printed the by-laws of the association, and its succeeding pages were intended to have entered the monthly payments, the date of payment and the name of the person to whom they were made.  These payments of dues were required to continue until thereby and with the just proportion of profits, each share would become worth $200.  This sum was then payable to the stockholder.

The sixth section of article II of the by-laws is as follows :

" At the regular meeting of the board of directors in March and September, the president shall appoint three directors as a financial committee, to serve the ensuing six months, who shall receive the monthly payments of dues, interest and fines at the monthly meeting, pay the same to the treasurer, and take his receipt for the same."

2. On October 20, 1890, H. S. Louchheim, the father and trustee of the plaintiff, then in his minority, paid B. F. Houseman, the secretary of the association, for nine shares of its stock, the sum of $18.50, and received from him a deposit book with his receipt for this sum.  The book was blank at the space left for the designation of the series.  The then current series was the twenty-eighth, and the plaintiff, either by his father or by himself, after attaining his majority, paid from October 20, 1890, the monthly dues upon these nine shares

up to and including the payment of May 21, 1900. Excepting the last, the payments were all made to Houseman, when and as he each month called for them at the store of H. S. Louchheim on Market street, which was not the place of meeting of the association. Excepting the last payment, all were receipted for in the deposit book by Houseman. Neither the plaintiff nor his trustee ever attended a meeting of the association; neither did he read the by-laws, or know what they enjoined.

3. Of the dues amounting to $1,053 so paid, Houseman paid to the association no more than $415.50 and he caused it to appear in the roll book that the first subscription on account of the plaintiff was in April, 1894, when the thirty-fifth series was current.

4. Stockholders were entitled to a certificate of stock by virtue of the sixth section of article I of the by-laws; to most of the stockholders certificates were not issued; they were so issued generally when a stockholder transferred his shares, and when the stockholder obtained a loan from the association: no certificate was issued to the plaintiff.

On June 3, 1897, the association loaned $500 to him upon his note accompanied by a pledge of two and a half shares of its stock and of shares in another building and loan association and nothing was then deducted from the sum loaned by reason of alleged fines or dues in arrear.

The second section of Article IV of the association provided:

" Whenever a stockholder shall have bidden successfully for a loan he shall permit the premium he bid to be deducted from the amount to be received by him and also all arrearages and fines due on the borrowed stock."

Twenty-two months after the loan the plaintiff repaid it to the defendant with interest.

On June 18, 1900, the plaintiff gave the defendant notice in writing of his purpose to withdraw and required payment of the withdrawal value of nine shares, twenty-eighth series.

5. By virtue of article VII of the by-laws in force when the plaintiff first became a stockholder it was provided that they might be altered by a vote of a majority of the stockholders at the annual meeting or at a special meeting called for the

purpose, provided the amendment was proposed at a meeting of the stockholders or of the board of directors held a month previous and that notice of the amendment shall have been published in the Public Ledger, newspaper.

Under the by-laws in force when the plaintiff became a stockholder, one wishing to withdraw upon giving a month's notice was entitled to receive " all moneys paid in on said stock and after the first year interest at the rate of six per cent per annum less fines and proportion of losses."

In 1892 the defendant association was granted a new charter under the provision of the act of April 10, 1879, and a committee was appointed to revise the by-laws, as appeared by a minute of July 18, 1892. In September and October the committee reported progress ; on March 20, 1893, which was the annual meeting of the stockholders, a motion was made to adjourn for a month when action was to be taken on the by-laws as revised by the committee. Of such meeting there was no minute, but it was shown by uncontradicted testimony to have been held and at it the revised by-laws were adopted. No evidence was offered of publication in the newspaper.

Under the revised by-laws it was provided that the interest payable to a withdrawing stockholder should be three per cent per annum.

On June 18, 1900, the withdrawal of nine shares of stock in the twenty-eighth series, with interest at six per cent, would be $1,360.98. Its value with interest at three per cent would be $1,206.99.

Upon the same date the withdrawal value of nine shares in the thirty-fifth series at six per cent would be $801.54. Its value with interest at three per cent would be $738.27.

6. It frequently happened that monthly dues were sent by stockholders to the meetings by the hands of a member of their family, by other stockholders and sometimes by officers of the association, and these dues were received by the financial committee and the receipt noted when at a subsequent meeting the deposit book was produced. In some cases payments of dues were made to Houseman at places away from the meeting. Upon several occasions he gave his duebill to the treasurer or financial committee for the amount of dues paid him, and these duebills were satisfied.

There were occasions upon which, shortly before his death, Houseman did not produce the roll book at the monthly meetings, as should have been done; and there were three annual reports in which the payments with respect to the twentyninth and thirty-fifth series of stock were confused by Houseman. He was fully trusted as well by plaintiff, the plaintiff's trustee, as by the association. Had his conduct raised suspicion his malappropriation of the moneys paid to him and intended for the association could, upon a comparison of its books with the deposit books of members, have been revealed.

7. The plaintiff, then a minor and acting by his father as trustee, subscribed for the stock now in dispute October 20, 1890. For ten years prior his father, as trustee for the plaintiff and two of his other sons, had subscribed to stock in the defendant association, and had regularly intended to pay the monthly dues thereupon by giving the money to Houseman when each month he called for it at the father's store on Market street. Houseman each month gave his receipt for these payments. The trustee never attended a meeting of the association, and did not read its by-laws with respect to the shares on which in this manner he had paid the monthly dues and which were in the fifth series. The association by its resolution of September 15, 1890, declared it matured and issued its warrant to its treasurer, drawn by Olwine, the president, and countersigned by Houseman, the secretary, by which upon the treasurer's check there was paid to H. S. Louchheim, trustee for his three sons (one of whom was the plaintiff), the sum of $4,861.20.

8. Seemingly because his misdeeds were about to be discovered by the association, Houseman, on May 10, 1900, was found to have killed himself, and within a very few days there was discovered the failure to make entries of moneys and the falsification of the books by which up to that time he had concealed his fraudulent dealings.

The referee found that the defendant was estopped from denying the validity of the payments to the secretary, and entered judgment for plaintiff for $1,181.58.

The court in an opinion by BEITLER, J., sustained an exception to the referee's report, and entered judgment for defendant.

*Error assigned* among others was in entering judgment for defendant.

*S. K. Louchheim* and *V. Gilpin Robinson*, with them *S. Davis Page*, for appellant.—From the course of dealings with the plaintiff the defendant is estopped from claiming any arrearages of dues : Mohrfeld v. Bldg. Assn., 194 Pa. 488 ; Schutte v. B. & L. Assn., 146 Pa. 324 ; Louchheim v. B. & L. Assn., 16 Pa. Superior Ct. 33 ; Girard Life Ins., etc., Co. v. Mut. Life Ins. Co., 97 Pa. 15 ; Blakiston v. Am. Life Ins. Co., 15 Phila. 315 ; Helme v. Ins. Co., 61 Pa. 107.

The ratification, either directly or indirectly, by a principal of the unauthorized acts of an agent, binds the principal : Himes v. Herr, 3 Pa. Superior Ct. 124 ; Valentine v. Packer, 5 Pa. 333.

Where one of two innocent persons must suffer a loss from the fraud of a third person, the loss must be borne by the one whose negligence enabled the third person to commit the fraud : Cunningham v. B. & L. Assn., 6 Pa. Dist. Rep. 99 ; Kilpatrick v. Bldg. & Loan Assn., 119 Pa. 30 ; Garrard v. Haddan, 67 Pa. 82.

The fines being a penalty for nonpayment and the imposition of fines being delegated to the secretary (who knew that the plaintiff had not neglected to pay his dues), the association is estopped from making any demands for fines : Building Assn. v. Schuller, 3 W. N. C. 431 ; Hagerman v. Ohio Bldg. & Savings Assn., 25 Ohio, 186.

*Horace Haverstick* and *Frank P. Prichard*, for appellee.— The by-laws of a corporation when enacted become a part of its charter, and all persons whether members or strangers and a fortiori members are bound at their own risk to take notice of them and of the powers and duties, as defined by the by-laws, of those officers of the corporation with whom they deal : Millward-Cliff Cracker Co.'s Est., 161 Pa. 157 ; Wayne Title, etc., Co. v. Ry. Co., 191 Pa. 90 ; Worthington v. Ry. Co., 195 Pa. 211 ; Van Wagenen v. Genesee Falls Permanent Savings & Loan Assn., 88 Hun, 43 (34 N. Y. Supp. 491).

A course of dealing cannot abrogate the by-laws : Millward-Cliff Cracker Co.'s Est., 161 Pa. 157 ; Delaware Ins. Co. v. White Dental Mfg. Co., 109 Fed. Repr. 334.

There can be no estoppel because of supposed negligence on the part of the association in discovering the fraud of Houseman : Penna. R. R. Co.'s App., 86 Pa. 80.

OPINION BY RICE, P. J., July 28, 1904 :

This action of assumpsit was brought by a stockholder in a building and loan association to recover the withdrawal value of nine shares of stock. The principal question in the case is as to the amount to which the plaintiff is entitled to credit for payments on his stock, and this depends upon the validity of certain payments of dues which were made to the secretary of the association, as he each month called for them at the place of business of plaintiff's father and trustee, for which the secretary receipted in the plaintiff's pass or deposit book, but fraudulently neglected to pay to the association. The by-laws relative to the subject provide that a member, " for each share of stock owned or held by him shall pay the sum of $1.00 a month at the stated monthly meetings of the board of directors," that " the board of directors shall hold a stated meeting . . . . on the third Monday of each month for the purpose of receiving the monthly dues, interest and fines from the stockholders," and that at " the regular meeting of the board of directors in March and September the president shall appoint three directors as a financial committee to serve the ensuing six months ; who shall receive the monthly payment of dues, interest and fines at the monthly meetings, pay the same to the treasurer and take his receipt for the same." The by-law prescribing the power, authority and duties of the secretary contains nothing which expressly or impliedly authorizes him to collect dues from members ; nor has any by-law been called to our attention which can be construed as empowering the board of directors to give him such authority ; nor does the evidence disclose any formal action of the board of directors having that object in view.

The by-laws of a corporation, upon their adoption, become written into the charter, and all persons, whether strangers or members, who deal with the corporation are bound to take notice of the powers and duties, as defined in the by-laws, of those officers of the corporation with whom they deal : Millward-Cliff Cracker Co.'s Est., 161 Pa. 157 ; Wayne Title & Trust Co. v.

Schuylkill Electric Ry. Co., 191 Pa. 90; Worthington v. Schuylkill Electric Ry. Co., 195 Pa. 211; 10 Pa. Superior Ct. 117. There is obviously a stronger reason for applying this rule where a party dealing with a corporation is a member, and, as was the case here, has in his actual possession a copy of the by-laws. Prima facie, therefore, the defendant association was not chargeable with the payments in question, not merely because they were not made at the stated meetings of the board of directors, but because they were not made to the persons appointed under the by-laws to receive them. This distinguishes the case from Schutte v. California Building & Loan Association, 146 Pa. 324, and Louchheim v. Richmond Mutual Building & Loan Association, 16 Pa. Superior Ct. 33, and makes these decisions inapplicable.

The learned referee in an able and lucid report held the association to be liable for these payments upon another ground. He says: " Since it was in the power of the board to have authorized collection of dues differing from that provided under the by-laws, it being purely a matter of company control and management, it was in its power to ratify and sanction such collection and this it did." We are not prepared to give assent to the legal proposition involved in the foregoing statement, namely, that notwithstanding the by-laws prescribed that payments shall be made to the financial committee to be appointed by the president, and notwithstanding such committee was appointed and attended at the time and place prescribed by the by-laws, it was nevertheless within the power of the board of directors to authorize the secretary or any other officer to go about among the members and collect their dues. But it seems unnecessary to enter into an extended discussion of that question, because the evidence, as we view it, does not show that the board of directors attempted to exercise such power, nor that there was any conduct on their part which may be regarded as an acquiescence in or a ratification of any unauthorized action of the secretary. It appears that the plaintiff through his father as trustee had been a subscriber to a former series of stock, the fifth; that during a period of ten years all payments of dues upon that stock were received by the secretary at the place of business of the trustee, which was disconnected from, and in a different part of the city from, the

meeting place of the association ; that the money thus received by the secretary was paid by him to the financial committee and by them turned over to the treasurer ; that the board of directors knew that the payments were made in this way, and with this knowledge, by resolution declared the fifth series of stock matured and pursuant thereto paid to the plaintiff's trustee the full value of his shares as matured stock. This was about a month before the date of the first payment to the secretary upon the stock now in question. This course of dealing with reference to the stock of the fifth series is relied on as proof that a different mode of payment from that prescribed by the by-laws had been set up by the board of directors, and as a justification of the plaintiff's belief that payments to the secretary would be duly credited to him by the association, as they had been in the former series. But it is to be observed that the by-laws did not require members to appear in person at the monthly meetings, and the referee reports that it was customary for them to send their dues to the meetings by members of their families, by other stockholders and sometimes by officers of the association. The reception of dues from such intermediary, even though an officer, established no course of dealing which was in anyway inconsistent with the provisions of the by-laws, and therefore, would not warrant a member in supposing that in future series his full duty would be discharged by paying them to the same officer. Judge BEITLER well says: " There was no reason why the association should object to Houseman being the bearer of the moneys any more than if Mr. Louchheim had sent his coachman or a messenger boy with the money. There was no requirement in the by-laws that the money must be paid by the member nor any that the pass book or receipt book must be produced by the member or his messenger. . If the member chose to pay without getting a receipt it was no concern of the association. We fail to see, then, how the fact that the association declared Mr. Louchheim's shares, of which it had actually received through channels named in its by-laws every cent due, matured, committed it at all to a recognition of the secretary as its agent. Had the moneys been brought to the meetings every night by someone unconnected with the association, or by someone who was a member, the fact that the association repaid on maturity

to Mr. Louchheim would not have constituted the messenger, in one case a stranger to the association, in the other a member, the association's agent . . . . In reality the association paid because it had received the dues every month from Mr. Louchheim. It could not have escaped paying." He further elaborates this idea in such manner as to render it unnecessary to pursue the discussion further.

An elaborate argument is made to show that the defendant is estopped to prove the true state of the account between it and the defendant by the negligent failure of several auditing committees to discover the falsifications which the secretary had made in the roll book to cover up his fraud. Upon this subject we remark that there is no distinct finding of the referee that these audits were negligently conducted; nor is it clear to us that such finding was required by the evidence. · The truth seems to be that the secretary fraudulently kept the roll book in such manner as to deceive the directors and officers, but just how this can be made to operate in the plaintiff's favor and enable him to recover dues from the association which the association did not receive has not been made clear. If he had read the by-laws which were actually before his eyes every time he took a receipt for his monthly dues, he would have seen that the secretary whom he was trusting was not the authorized agent of the association in that matter. The primary cause of the loss was his own misplaced confidence in the person to whom he intrusted his dues, and it is impossible to see how the fact that this person added to the crime of embezzling the plaintiff's money the fraudulent manipulation of the association's accounts in such a way as to deceive its officers can be given as a valid reason for allowing him to throw off from himself on to the defendant the loss which has resulted from the dishonesty of his own agent. Upon the question of the conclusiveness of the account as kept by the secretary we call attention to our decision in Folsom Building and Loan Association v. Gogel, No. 228, October term, 1902 (24 Pa. Superior Ct. 539), rendered since this case was argued, in which Judge BEAVER says: "The dues and fines are payable under the by-laws and, whether entered in the books or not, are due and payable by the defaulting member. It is no contradiction, therefore, of the books to show that dues and fines

other than those entered thereon were due from the defendant."

One of the by-laws of the association reads as follows: "If any member is in arrears in his payments for six months, and also has not a loan from the association, the board of directors may declare his stock forfeited; and he shall thereupon be entitled to receive all moneys paid in by him on said stock, less fines and his proportion of losses." It is argued that the fines referred to in the latter clause of this section are such fines as are chargeable for six months' arrears and no more, and the clause entitling the non-borrowing stockholder to receive all moneys paid in by him on his stock less fines and his proportion of losses confers a right upon him of which the board of directors cannot deprive him by failure to forfeit his stock. We cannot give our consent to this construction of the by-law. The member is bound to know whether he is in arrear, and has no standing to complain that the directors did not forfeit his stock at the expiration of the six months for which he was in arrears or notify him of that which it was his duty to know. As to the reasonableness of the imposition of a fine of two per cent a month on arrearages, where the member is a non-borrower, it seems sufficient to say that it is not in excess of the amount authorized by the act of 1879 and the by-laws of the association.

The first entry in the financial committee's book and the first payment made to the financial committee upon the shares of stock in question was on April 16, 1894. This was $9.50, of which, as shown by the amount, $9.00 were for dues and fifty cents for entry fee. No certificate of stock was issued to the plaintiff for these shares. This payment, in our opinion, determined the series in which the plaintiff's stock belonged. As originally opened and kept for nearly a year the secretary's account showed that it belonged to the series, the thirty-fifth, then being issued by the association, and the fact that subsequently the secretary for his own fraudulent purposes transferred the account to the twenty-ninth series cannot affect the question. After all the case turns upon the question whether the secretary in receiving from the plaintiff his monthly dues and carrying them to the monthly meetings of the association was the agent of the plaintiff or the agent of the defendant. Having

determined that under the facts of the case he must be deemed to have been the former, the familiar principle is applicable that "where one of two parties, who are equally innocent of actual fraud, must lose, it is the suggestion of common sense, as well as equity, that the one whose misplaced confidence in an agent or attorney has been the cause of the loss shall not throw it on the other: " Pennsylvania Railroad Co.'s Appeal, 86 Pa. 80.    The case cited furnishes an illustration of the application of this principle which is pertinent here.

Judgment affirmed.