## Scouton v. Stony Brook Lumber Company, Appellant.

*Corporations—Principal and agent—Execution of note without signature of treasurer—Use of money to pay corporate debts—Estoppel—Failure to mention loan in corporate minutes—Corporate or personal loan—Conflicting evidence—Case for jury.*

1. A party cannot avail himself of the benefit of his agent's act and repudiate his authority.

2. A corporation which has received the benefit of a note irregularly issued cannot escape liability thereon by showing it was not executed by the proper officer; and a director of a company, suing, is not denied the application of such rule.

3. A corporation may lawfully borrow money to pay its indebtedness and when used for that purpose the obligation to repay is undoubted, and the fact that the loan did not pass through the hands of the treasurer is not controlling, nor is the absence of any reference thereto in the corporate minutes.

4. The president of a corporation who owned or controlled a majority of its capital stock agreed to sell his entire holdings to the holder of the balance of the stock for $50,000, on condition that

all the liabilities of the company be met at the time of the transfer. The liabilities amounted to $41,000, including a sum of $6,500 owing the president for back salary. The purchaser employed plaintiff as attorney to assist in obtaining the sum of $91,000, of which sum plaintiff himself advanced $5,000. When the deal was consummated the company was reorganized with the purchaser of the stock as president, and plaintiff and three others as directors. In an action against the corporation for the recovery of the $5,000 advanced by plaintiff the evidence was conflicting as to whether such sum was a loan to the corporation and used in part payment of the former president's salary or whether it was a loan to the purchaser of his stock. Plaintiff offered in evidence a note for such amount to plaintiff's order, and executed by the new president and secretary in the corporate name, although it was not signed by the treasurer and the evidence was conflicting as to whether he had consented to the making of the note. None of the $91,000 turned over to the former president passed through the hands of the treasurer, and no mention of the loan was made on the corporate minutes. *Held,* (1) defendant's obligation arose from the receipt of the money by it, and the note, although defectively executed, was properly admitted in evidence, and (2) the case was for the jury and a verdict for the plaintiff will be sustained.

Argued March 18, 1918. Appeal, No. 287, Jan. T., 1917, by defendant, from judgment of C. P. Sullivan Co., Dec. T., 1916, No. 35, on verdict for plaintiff in case of John G. Scouton v. The Stony Brook Lumber Company. Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ. Affirmed.

Assumpsit for money loaned. Before TERRY, P. J.

The facts appear by the opinion of the Supreme Court.

Verdict for plaintiff for $5,465 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment non obstante veredicto.

*C. D. Coughlin,* with him *G. J. Clark,* for appellant.— The plaintiff cannot charge the defendant with liability by reason of loose statements of defendant's officers and

directors; corporate action must be shown: Allegheny County Workhouse v. Moore, 95 Pa. 408; Dorsey v. Abrams, 85 Pa. 299; Sword v. Reformed Congregation Keneseth Israel, 29 Pa. Superior Ct. 626; Workman's Loan & Building Association v. Heaton, 233 Pa. 173.

Statements made by plaintiff unobjected to by directors are not evidence of ratification: Tift v. Quaker City National Bank, 141 Pa. 550.

A corporation as well as a natural person may repudiate a contract executed by an agent without authority: Pittsburgh & Steubensville Railroad Company v. Allegheny County, 79 Pa. 210.

The note sued upon should not have been admitted in evidence: Pollock v. Standard Steel Car Company, 230 Pa. 136; First Natl. Bank of Allentown v. Hoch, 89 Pa. 324.

E. J. Mullen, for appellee.—Where a corporation has received the benefit of the proceeds of notes, although irregularly issued, it will be estopped from denying liability, even if the notes were executed in disregard of the provisions of the by-laws: Hartzell v. Ebbvale Mining Co., 239 Pa. 602; First National Bank of Bangor v. American Bangor Slate Co., 229 Pa. 27; Millward-Cliff Cracker Co.'s Est., 161 Pa. 157; Wayne Title & Trust Company v. The Schuylkill Electric Railway Co., 191 Pa. 90; Presbyterian Board v. Gilbee, 212 Pa. 310.

If a director of the corporation supplies the latter with money to meet its legitimate needs, and the money so furnished is properly used in carrying on the corporate business, he is entitled to recover from the company the amount so advanced: Kendall v. Klapperthal Co., 202 Pa. 596.

OPINION BY MR. JUSTICE WALLING, April 22, 1918:

This is an action of assumpsit for money loaned. The defendant company was incorporated in 1910, with an authorized capital stock of $200,000, divided into shares

of $100 each. It owned a tract of 2,200 acres of timber land in Sullivan County, where it was engaged in the manufacture and sale of lumber. Prior to August, 1915, fifteen hundred shares of its capital stock had been issued, of which eleven hundred shares were owned or controlled by John Hughes Blackman and the remaining four hundred shares by C. F. Carter. The latter manufactured the lumber for the corporation, and the former looked after its business affairs. In the spring of 1915, Carter secured from Blackman an option for the purchase of his stock. Blackman was president of the corporation and insisted that, in connection with the sale of his stock, all the company's direct and collateral liabilities, amounting to about $41,000, must be paid. The agreed price for his stock was in round numbers $50,000; making the amount necessary to consummate the transaction $91,000. Carter employed plaintiff, who was an attorney, to assist him in securing this money, which was obtained largely by loans from banks and individuals. The option as drawn expired July 15th, of that year, but was extended. The parties in interest met at a bank in Pittston on July 31st, also on August 2d and again on August 4th, when the matter was finally consummated and Carter became the owner of practically all the stock of the corporation. At the same time the company was reorganized and the number of directors increased from three to five, which included Carter, his two sons, plaintiff and H. W. Ruggles; a share of stock was transferred to each of the two latter to qualify them to act as such. Mr. Carter became president, his son, Bruce A. Carter, secretary and Mr. Ruggles, treasurer.

Some of the notes given by Carter to raise the money were endorsed by plaintiff, who also furnished $5,000 of his own; which amount, with the balance of the $91,-000 was turned over to Blackman at the meeting on August 4th. So far as appears, Mr. Blackman paid all the debts and liabilities of the old company and retained the balance as the price of his stock. The only question

involved in this suit is whether the $5,000 was a loan to Carter or to the corporation; plaintiff says to the corporation. The $41,000 indebtedness included $6,500 owing to Blackman for salary. On the day last mentioned there was a meeting of the new board of directors, at which four were present; and the evidence for plaintiff tends to show that it was then agreed and understood that his $5,000 was a loan to the corporation and to be used in payment of Blackman's salary. In corroboration of this a three months' note for that amount, drawn payable to plaintiff and executed by the new president and secretary in the corporate name, was put in evidence. The note was not signed by the treasurer as the by-laws provide; but plaintiff's evidence is to the effect that the treasurer was present, consented to the transaction and said he would sign the note if necessary. This is denied by the treasurer, who testifies, in effect, that it was a loan to Carter and not to the company and that the question of treating it as a loan from plaintiff to the company was broached at the meeting on August 2d, when he (the treasurer) refused to so consider it or to sign the note and that later, after a private conversation between Carter and plaintiff, they stated that other arrangements had been made as to the $5,000; and further that he had no knowledge of said note until long afterwards and never consented thereto. As we understand the facts, none of the funds turned over to Blackman, passed through the hands of the treasurer. The minutes of the corporate meeting held that day contain no reference to this loan. Ruggles seems to have been interested in this suit as the holder of a large block of the company's stock as collateral for a loan to Carter, who died in November, 1915, apparently insolvent. The note was admitted in evidence in support of plaintiff's contention. As the court below says there was a sharp conflict in the evidence. Each side was supported to some extent by more than one witness, and the case became largely one of fact; as such it was submitted to the

jury with adequate instructions. The verdict was in favor of the plaintiff; and the lower court, after careful consideration, directed judgment to be entered thereon; from which defendant appealed. We find no error in the record.

Some of the funds turned over to Blackman were for his stock and the balance for corporate indebtedness. The jury found this $5,000 was a part of the latter; that being so, the corporation received the benefit of the loan. Conceding that the president and secretary were not authorized to execute the note, yet the company got the money, which it cannot retain and repudiate the agency by which it was secured. Upon this question we adopt the following from the opinion of the court below: "If plaintiff's money was loaned and used for such purpose it is of no consequence that the election of officers was irregular, or that one of them was absent at the time of such loan, or that the treasurer did not execute the note. Such irregularities give way to the principle that a party cannot avail himself of the benefit of his agent's act and repudiate his authority—in the application of which it is held that a corporation which has received the benefit of a note irregularly issued cannot escape liability thereon by showing it was not executed by the proper officers: Hartzell v. Ebbvale Mining Co., 239 Pa. 602; Pannebaker v. Tuscarora Valley R. R. Co., 219 Pa. 60; Presbyterian Board v. Gilbee, 212 Pa. 310; Penn. Natural Gas Co. v. Cook, 123 Pa. 170; MacGeorge v. Chemical Mfg Co., 141 Pa. 575. And a director of a company, suing, is not denied the application of such rule: Kendall v. Klapperthal Co., 202 Pa. 596."

The defendant's obligation arises from the receipt of the money by it, and the note, although defectively executed, is evidence as tending to establish the loan. See Wojciechowski v. Johnkowski, 16 Pa. Superior Ct. 444. A corporation may lawfully borrow money to pay its indebtedness and when used for that purpose the obligation to repay is undoubted. The fact that the loan in

question did not pass through the hands of the treasurer is not controlling, nor is the absence of any reference thereto in the corporate minutes.

The assignments of error are overruled and the judgment is affirmed.