Wood Company, Appellant, *v.* McCutcheon et al.

Argued May 2, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*David M. Harrison,* for appellant.

*William H. Eckert,* with him *Emory R. Kyle,* and *Smith, Buchanan & Ingersoll,* for appellees.

OPINION BY PARKER, J., July 13, 1939:

This is an action in assumpsit in which the defendants have a verdict and judgment in their favor. The sole complaint of the appellant is directed to the refusal of its written point for binding instructions and its subsequent motion for judgment n. o. v.

The plaintiff sought to recover a balance claimed to be due on a brokerage account which it maintained with the defendants and the amount of which balance defendants claimed to have paid to third parties by written direction of the plaintiff acting through its president. The plaintiff denied any authority so to pay to third parties and asserted that defendants were mere volunteers "attempting to thrust alleged benefits upon plaintiff." The defendants in turn claim that the proofs show that the payments to such third parties were authorized, that such payments were for the benefit of plaintiff and that plaintiff is estopped by its conduct from denying the authority of the defendants to make such payments.

Following the familiar rule that on a motion such as we are considering the evidence must be viewed in a light most favorable to the one who has the verdict of a jury and all reasonable inferences drawn in his favor, we will so state the essential facts. The plaintiff, a close family corporation, consisting of the president, E. E. Gibbons, his wife, Helen Gibbons, and her father, A. G. Fisher, secretary and treasurer, was engaged in a general brokerage business. As it did not have a stock exchange seat, it conducted some of its business through the defendants who were well known stock brokers. On May 7, 1935, a customer's agreement was entered into between plaintiff and defendants giving the president broad powers to manage the brokerage account with defendants and on the same day plaintiff delivered to defendants a copy of a resolution of the board of directors of the plaintiff which had been previously adopted, authorizing the establishment and

maintenance of accounts with defendants. It gave the president or any vice-president or the treasurer "the fullest authority at all times ...... with respect to any transaction deemed by any of said officers and/or agents to be proper in connection therewith ...... including authority (without limiting the generality of the foregoing) to give written or verbal instructions to the Brokers with respect to said securities, commodities and/or commodity futures." It also invested any of such officers with authority "to bind and obligate the Corporation to and for the carrying out of any contract, arrangement, or transaction, which shall be entered into by any such officer and/or agent for and on behalf of the Corporation with or through the Broker."

During a period between May 1 and July 13, 1935, the defendants by written direction of the president of plaintiff corporation paid to third parties to whom plaintiff was indebted sums aggregating $1437.77, which is the amount claimed in this action. These items were outstanding obligations of plaintiff for telephone service, clerk hire, attorney and accountant fees for services rendered in connection with an application to Securities Exchange Commission for a continuance of its license as a broker, and payment to a customer for a balance due on account of stocks sold for such customer. All of these items were due and payable for matters immediately connected with the business of plaintiff, they were pressing obligations and it was essential to the continued existence of the business of plaintiff that the accounts be paid promptly. The payments so made through the defendants were made necessary by the fact that either the treasurer of the plaintiff was not available at the time to sign checks on its bank account or there were not sufficient funds in its bank account available at the time to discharge such obligations.

The by-laws of the plaintiff provided: "The president

450

shall be the chief executive officer, and at such times as the board of directors is not in meeting shall be charged with the general control and management of the business, with full authority to appoint or discharge any agent or employe; shall prescribe the duties of the officers and employes when not otherwise provided, and perform such other duties in connection with corporate business as may be necessary under the circumstances to further the interests of the corporation."

It seems clear to us, taking into account the circumstances, that the by-laws of the plaintiff corporation and the resolution of the board of directors, a copy of which was delivered to defendants on May 7, 1935, gave to E. E. Gibbons as president of the plaintiff corporation express authority to make the questioned payments. The by-laws, as we have seen, placed the management and control of the plaintiff's business in the hands of its president when the board of directors was not in meeting. The customer's agreement entered into between the parties by authority of the board of directors also designated the president as the person who was authorized to represent the plaintiff in all dealings with the broker. The president was not only empowered to keep the business in operation but it was his duty so to do. Most of the orders executed by the plaintiff were received by telephone. A telephone was essential to the continuance of the business and the company was threatened with a discontinuance of service if a bill for service was not paid at once. The by-laws placed the president, as general manager, in charge of the hiring, discharging and prescribing the duties of employees necessary to carry on the business. The largest disputed item was not only for stock sold for account of a customer, but was a transaction which had been executed by the defendants for the plaintiff. The net result was that defendants by written direction of the president of plaintiff corporation paid the customer directly a balance due her for stock so sold. It is hard

to conceive of a matter that would be more clearly within the duties of the president as prescribed by the by-laws and the board of directors. It was shown beyond question that each and every item was a valid subsisting obligation for services rendered which was necessary to the continuance of plaintiff's business.

"Unless otherwise agreed, authority to manage a business includes authority ...... to receive payment of sums due the principal and to pay debts due from the principal arising out of the business enterprise": Restatement, Agency, §73. Also see *F. & M. National Bank v. Coal Co.*, 89 Pa. Superior Ct. 146. While it was provided that the bank deposit of plaintiff could not be drawn upon without the signature of the treasurer that was not what was here done.

The board is the central power which authorizes the executive agents of the corporation to transact business but "the extent and complexity of the affairs of modern corporations are such that it has become impracticable, if not impossible, for private corporations to function without vesting in agents authority to act for them in matters which involve the exercise of some individual choice or discretion upon the part of agents": *Severance v. Heyl & Patterson*, 123 Pa. Superior Ct. 553, 559, 187 A. 53. By the resolution referred to the defendants were advised by plaintiff that its president had authority to bind the corporation "to and for the carrying out of any contract, arrangement, or transaction" entered into by the president for and on behalf of the corporation with the broker.

This is not the case of a mere volunteer, a stranger to the transaction, paying the obligation of a debtor to a creditor and then seeking to make such payment the basis of a claim against the debtor. .The defendants were not mere volunteers but were responding to the request of at least an apparent agent of the debtor to pay the creditor. There is a vast amount of evidence which shows beyond question that the claims paid were

all valid and pressing obligations of the plaintiff corporation and there is not an item of contradiction worthy of consideration that the claims were not of that character.

Our construction of the documentary evidence is supported by previous acts of plaintiff, for the plaintiff by its conduct had led the defendants to believe that the president was possessed of all the authority claimed by him. "(1) Acquiescence by the principal in conduct of an agent whose previously conferred authorization reasonably might include it, indicates that the conduct was authorized; if clearly not included in the authorization, acquiescence in it indicates affirmance. (2) Acquiescence by the principal in a series of acts by the agent indicates authorization to perform similar acts in the future": Restatement, Agency, §43. The account between plaintiff and defendants was the continuance of an account with a former brokerage company whose business was transferred to the defendants. The evidence disclosed that in the plaintiff's transactions with the former brokerage company, as well as with the defendants, it had on a number of occasions met its obligations by the same method as was employed here. All of this was either to the knowledge of or should have been known to the officers of the plaintiff. The objecting stockholder, Mr. Fisher, as treasurer of the corporation, as well as the president, knew for some time that claims were being paid in this same manner.

"A person who knows that the officer or agent of the corporation habitually transacts certain kinds of business for such corporation under circumstances which necessarily show knowledge on the part of those charged with the conduct of the corporate business assumes, as he has the right to assume, that such agent or officer is acting within the scope of his authority": Curtis L. & L. Co. v. Interior L. Co., 137 Wis. 341, 118 N. W. 853, 129 Am. St. Rep. 1068, 1076. Such a corporation is ordinarily liable for the acts of its officers if the board of directors knew or should have known

that he was acting as if he had such authority: *Weissburg v. Peoples State Bank,* 284 Pa. 260, 131 A. 181; *Culver v. Pocono Spring W. I. Co.,* 206 Pa. 481, 56 A. 29; *Dougherty v. Hunter,* 54 Pa. 380. Apparent authority is such authority as the corporation knowingly permits the officer or agent to assume or which it holds him out as possessing.

The jury found that the company received the full benefit of payments made. This is an important fact. The books are full of cases where it has been held that a corporation will not be permitted to repudiate even unauthorized acts of its officers when the corporation has received and retained the benefit of the transaction. In *Scouton v. Stony Brook Lumber Co.,* 261 Pa. 241, 104 A. 548, it was held that where a corporation received the benefit of a note irregularly issued the corporation could not escape liability thereon by showing that it was not executed by the proper officers. Also see *Wayne Title and Trust Co. v. Schuylkill E. Ry. Co.,* 191 Pa. 90, 43 A. 135; *McBride v. W. Pa. Paper Co.,* 263 Pa. 345, 106 A. 720; *Hamaker v. Fulton Farmers' Assn.,* 271 Pa. 465, 114 A. 627. "It is repugnant to every sense of justice and fair dealing that a principal shall avail himself of the benefits of an agent's act, and at the same time repudiate his authority. A corporation may not avail itself even of ultra vires as a defense where a contract has been entered into and executed in good faith by the other party and the corporation has received the benefit of the performance": *Presbyterian Board v. Gilbee,* 212 Pa. 310, 314, 61 A. 925.

It has frequently been held under circumstances comparable to those shown here that where a principal acquiesces in his agent's pursuing a certain course of conduct the principal will be *estopped* from repudiating similar acts of his agent in the future: *First National Bank v. American Bangor Slate Co.,* 229 Pa. 27, 32, 77 A. 1100; *Dobbs v. Zink,* 290 A. 243, 138 A. 758.

The judgment is affirmed.