In the Matter of **ETON FURNITURE COMPANY, Bankrupt.**

**Morton S. Gorelick, Trustee, Appellant.**

**No. 13313.**

United States Court of Appeals Third Circuit.

Argued Dec. 8, 1960.

Decided Jan. 24, 1961.

Sidney B. Gottlieb, Philadelphia, Pa., for appellant.

George Weitzman, Easton, Pa. (Jerome W. Burkepile, Jr., Easton, on the brief), for appellee.

Before BIGGS, Chief Judge, and GOODRICH and FORMAN, Circuit Judges.

BIGGS, Chief Judge.

The appeal at bar is from a judgment of the court below dated June 15, 1960, sustaining an order of a referee in bankruptcy dismissing the trustee-appellant's petition for a turnover order against the Egypt-Schnecksville Bank (Bank), the appellee.

Eton Furniture Company (Eton) was engaged in the manufacture of upholstered furniture in Allentown, Pennsylvania. Huntington was Eton's general manager, who handled most of its business with the Bank. On several occasions he borrowed money from the Bank giving his individual note to the Bank, sometimes also pledging his automobile for security, and arranging for the proceeds to be credited to Eton's account. These sums were used by Eton for its own benefit. When Eton's deposits produced a balance deemed to be sufficiently ample the Bank appropriated Eton's funds to pay off the loans with interest.

On November 6, 1957, Eton was adjudged an involuntary bankrupt and in due course a trustee was appointed. On March 30, 1959, the trustee filed a petition for a turnover order against the Bank alleging that the Bank had in its possession $6600 belonging to the bankrupt's estate.[1] The trustee asserted that the loans negotiated by Huntington from the Bank, and for which he gave his personal notes to the Bank were loans to him and not to Eton. It was argued that Eton received the proceeds of the loans from Huntington and not from the Bank, and that therefore the satisfaction of the obligations from Eton's account with the Bank constituted an unjustified appropriation of Eton's funds by the Bank to pay the debts of another.

On April 17, 1959, and May 26, 1959, hearings on the issues presented were held by the referee. Huntington testified that when Eton was short of funds and not in a position to borrow from the Bank he would procure a loan for Eton on the strength of his personal note, sometimes putting up his car as additional collateral. He stated that these loans were negotiated by him on behalf of Eton and that his notes which he gave to the Bank were collateral security for primary obligations of Eton. The referee treated Huntington's testimony "as verity" and dismissed the petition on the ground that "[T]he course of dealing between Huntington and the Bank renders it clear that each understood that when Huntington borrowed money and credited the proceeds to Eton's account, Huntington was acting for the account of and in the interest of Eton, his principal."

The trustee filed a petition to review the order of the referee. The court below agreed in substance with the findings of the referee, saying that "[E]xcept for the signatures on the notes, everything in the evidence indicates that the primary obligation was to be that of the corporation rather than that of Huntington." It entered judgment for the Bank. 183 F.Supp. 554, 555. The appeal at bar followed.

The single issue which this court must determine is whether Eton was indebted to the Bank in the amounts of the loans negotiated by Huntington, its general manager. The trustee makes two arguments which we must consider. First, relying on Section 3–401(1) of the Uniform Commercial Code, applicable in Pennsylvania, 12A P.S. § 3–401(1), he contends that since Huntington's signature alone appears on the notes given by him to the Bank, Huntington alone can be held liable by the Bank for repayment of the loans. Second, he argues that Huntington was not authorized to borrow money for Eton and that therefore, regardless of any understanding that may have existed between Huntington and the

---

1. No objection was raised at any time to the summary jurisdiction assumed by the referee and this point, therefore, is foreclosed on appeal. See Section 2, sub. a(7) of the Bankruptcy Act, as amended, 11 U.S.C.A. § 11, sub. a(7) (1952). We treat the proceedings as if the parties had agreed, as in effect they have, that the issues be adjudicated in the summary proceeding. No issue as to jurisdiction is presented.

Bank, Eton, not being bound, could not be liable for repayment of the loans.

The trustee has not pointed to any persuasive reason why we should upset the findings of fact made by the referee and sustained in substance on review by the court below. Our review of the record, rendered scanty by the form of the proceedings which the trustee chose to initiate and in which the Bank acquiesced, amply supports the findings of the referee to the effect that Huntington's testimony disclosed the true nature of the transactions in question. We, therefore, start with the premise that Huntington's notes were intended to be collateral security, that all of the parties so understood the transaction, and that the money was in fact used by Eton for its own benefit.

Section 3–401(1) provides that "[N]o person is liable on an instrument unless his signature appears thereon." On the basis of this provision the trustee contends that Eton, not having signed the notes given to the Bank, cannot be held liable for repayment of the loans. This argument finds no support in the words of the statute which provides merely that one who does not sign a note cannot be liable on the note. Contrary to the trustee's argument, the provision quoted cannot be read to mean that no person is liable on a debt whose signature does not appear on a note given as collateral security for that debt. Indeed, it has long been settled in Pennsylvania and elsewhere that the one to whom money is loaned or property advanced is liable for the debt regardless of the fact that his name may not appear on the security taken if that security was regarded by the parties purely as collateral. That Section 3–401(1) was not intended to change this rule is demonstrated clearly by the comment to that section which states in pertinent part: "Nothing in this section is intended to prevent any liability arising apart from the instrument itself. The party who does not sign may still be liable on the original obligation for which the instrument was given, * * *".

The rule that a note given in a transaction as collateral security is not a bar to a suit on the primary obligation even though the primary obligor did not sign the note was enunciated clearly in In re Estate of Van Haagen Soap Mfg. Co., 1891, 141 Pa. 214, 21 A. 598, 599, 12 L.R.A. 223. The facts of that case are strikingly similar to those in the case at bar. In the Van Haagen case a bank claimed that a loan, for which the bank took the note of an individual, Van Haagen, had been actually a loan to the Soap Company. A person named Lambert also presented a claim based on a loan allegedly made to the Company for which he had taken a note executed by another individual, Hunter. Both claims were objected to on the grounds that the loans were made not to the company but to Van Haagen and Hunter, respectively. The claimants contended that the notes were taken merely as security and that the Company actually incurred the debt. The Supreme Court of Pennsylvania deemed the controlling question in the case to be "whether the loan of the money in each case was in fact to the company, or to the parties on the note; that is to say, whether the notes were received as a consideration for the money or as a security merely." The Supreme Court stated that "[A]s the giving of the note was in this case contemporaneous with the creation of the debt, the presumption, we think, was that the note was discounted, or that it was given as a consideration, and not as a security for the money. But, this is only a presumption of fact, and may be rebutted by showing the actual intent of the parties to have been otherwise." The Court then held that the presumption was rebutted by testimony showing "that the loans were for the company's use, that all the parties concerned so understood it, and that the money was in fact so applied." The Van Haagen case was reaffirmed in principle in Gordon v. Anthracite Trust Co., 1934, 315 Pa. 1, 172 A. 114, 93 A.L.R. 1160. Other courts are in accord on substantially similar facts. See Kendrick State Bank v. First Nat. Bank of Portland, D.C.D.Or.1913, 206 F.

940; Stockyards State Bank v. Merchants' State Bank, 1916, 97 Kan. 8, 154 P. 240; Chemical Nat. Bank of Chicago v. City Bank, 1895, 156 Ill. 149, 40 N.E. 328.

In the present case, the evidence of Huntington, adopted "as verity" by the referee, similarly shows that the loans were for Eton's use, that the Bank, Eton and Huntington understood this to be so, and that the money was in fact used by the Company for its own benefit. We hold that the finding of the referee and that of the court below that the debts were incurred by Eton is supported by the evidence and that their rulings are in accordance with the applicable law.[2]

■ The trustee's contention that Huntington had no authority to incur debts on behalf of the corporation also is without merit. Even if it be assumed that Huntington did not have the authority to borrow money on behalf of Eton the actual receipt and use of the money by Eton constituted ratification of Huntington's acts. See Hamaker v. Fulton Farmers' Ass'n, 1921, 271 Pa. 465, 114 A. 627; Scouton v. Stony Brook Lumber Co., 1918, 261 Pa. 241, 104 A. 548, 7 A.L.R. 1433; Benedictine Society v. National City Bank of New York, 3 Cir., 1940, 109 F.2d 679; Restatement, Agency 2d §§ 98, 99 (1958). See also Wood Co. v. McCutcheon, 1939, 136 Pa.Super. 446, 7 A.2d 564; C. L. McClain Fuel Corp., etc. v. Lineinger, 1941, 341 Pa. 364, 19 A.2d 478. Huntington's original lack of authority, therefore, cannot now be set up by the trustee as a defense to the Bank's claim against Eton's estate.

The judgment of the court below will be affirmed.

2. The trustee relies on Grange Nat. Bank of Lycoming County v. Conville, 1956, 8 Pa.Dist. & Co.R.2d 616, in which the court held that a corporation was not liable on notes even if signed by its authorized representatives since the notes did not show that the signatures were made on behalf of the company. That case is not in point, however, since there was no showing that the notes were given merely as collateral security. Liability, therefore, depended wholly on the note and Section 3–401 was available to the company as a defense.