**FILED**

**January 21, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 3:00 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Melissa Duck | ) Docket No. 2015-07-0089 |
| | ) |
| v. | ) |
| | ) State File No. 37887-2015 |
| Cox Oil Company | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) |
| Compensation Claims | ) |
| Allen Phillips, Judge | ) |

---

### Reversed and Remanded – January 21, 2016

---

In this interlocutory appeal, the employee worked as a clerk at the employer's convenience store. Soon after arriving at work on the day of the accident, she had a disagreement with an assistant store manager. After indicating she "was quitting," she turned to leave, slipped in water on the floor, and fell. The employer denied the employee's claim for workers' compensation benefits, asserting that the fall did not occur within the course of employment since the employee quit before the fall. In response to the employee's request for a pre-trial ruling without an evidentiary hearing, the trial court ordered the employer to provide medical benefits, concluding that "an employee who is leaving the premises of an employer immediately after terminating her employment remains in the course and scope of her employment for a reasonable time thereafter." Because we find there is insufficient evidence that an employment relationship existed at the time of the injury, it was error for the trial court to conclude that the employee is likely to prevail at a hearing on the merits. We therefore reverse and remand the case.

Judge Timothy W. Conner delivered the opinion of the Appeals Board, in which Judge Marshall L. Davidson, III, joined. Judge David F. Hensley dissented.

Colleen K. Horn, Nashville, Tennessee, for the employer-appellant, Cox Oil Company

Charles L. Holliday, Jackson, Tennessee, for the employee-appellee, Melissa Duck

## Factual and Procedural Background

Melissa Duck ("Employee"), a forty-nine year old resident of Gibson County, Tennessee, worked for Cox Oil Company d/b/a Little General Convenience Store ("Employer") in Dyer, Tennessee. On March 22, 2015, Employee reported to work and clocked in at approximately 2:00 p.m. According to Employee's affidavit, she then "had a conversation with my supervisor . . . about the duties he wished for me to perform that day." She stated, "[s]hortly thereafter, I told Mr. Sanders [sic] that I was quitting."[1] As Employee turned to leave, she "fell due to some water on the floor behind the ice cream cooler." Employee stated in her affidavit that "[a]fter I fell, I texted the Manager, Jake Flowers, telling him I had quit. He never called or texted back."

According to the affidavit of the assistant store manager, Jason Stanford, Employee arrived on the premises and clocked in at approximately 2:03 p.m. He then asked Employee to "work the main register." According to Mr. Stanford's affidavit, she declined. He then asked her to finish cleaning the ice cream freezer he had been working on so that he could run the main register. She again declined. According to Mr. Stanford's affidavit, the subsequent chain of events occurred as follows: "She then began picking up her items on the counter. I asked whether she was leaving, and she replied, 'Yes.' I asked whether she was quitting, and she replied, 'Yes.' As she turned around to leave, she slipped and fell in the water around the . . . ice cream freezer." Mr. Stanford stated that he clocked Employee out after she fell and after she left the premises.

The record also contains the affidavit of the store manager, Jacob Flowers. Mr. Flowers did not indicate he received any text message from Employee on the date of the accident. To the contrary, Mr. Flowers noted that "[o]n March 23, 2015, Ms. Duck was scheduled to work from 4:00 p.m. to 11:15 p.m. She did not report to work, and she did not contact me with respect to her absence as required pursuant to the Employer's Handbook Attendance Policy." He made an identical statement regarding the following day, March 24, 2015. Then, "[o]n or about March 30, 2015, Ms. Duck came into the Little General Store while I was at work. Ms. Duck told me that Jason Stanford, the Assistant Manager, was rude to her on March 22, 2015, and his behavior was why she walked out of the store. I told Ms. Duck that I could not help her at this point since the situation occurred over a week ago and she had walked out on the job."

A Notice of Separation was issued by Employer on or about April 6, 2015. It listed the period of employment from November 3, 2014 to March 21, 2015. Employer did not complete the section of the form instructing it to "explain the circumstances of this separation."

---

[1] Employee's affidavit identifies the assistant store manager as "Jason Sanders," but his affidavit indicates that his name is Jason "Stanford." Thus, we will refer to him as Jason Stanford.

Employee filed a Petition for Benefit Determination ("PBD") on May 19, 2015, seeking medical benefits for her injury. Under the section of the PBD entitled "Description of Injury," she wrote "quit minutes before falling." Following the issuance of a Dispute Certification Notice, Employee filed a Request for Expedited Hearing, but asked the trial judge to "issue a ruling based on a review of the file without an evidentiary hearing." Employer did not object and did not request an evidentiary hearing.

In her brief filed in the trial court, Employee presented a "narrow" issue: "is an employee who has just quit but is injured on the employer's premises passing from the place where work is done entitled to workers' compensation benefits." The crux of Employee's argument was that "[t]he act of the employee leaving the premises after she has stated she was quitting certainly bears a reasonable relationship to the employment, albeit the end to employment." In its response brief, Employer argued that "after resigning from her position as a store clerk, [Employee] no longer had a connection to her former place of employment."

In its Expedited Hearing Order for Medical Benefits, the trial court expressly found that "it requires no additional information to determine whether Ms. Duck is likely to prevail at a hearing on the merits of the claim." Consequently, the trial court exercised its discretion not to conduct a hearing and, instead, decided the motion based on the record alone, concluding that Employee was entitled to medical benefits. The trial judge noted that "the term 'course and scope of employment' encompasses the idea that an injury must occur at a time and place where the employee is expected to be *and* when doing something incidental or rationally-connected to the work." The trial court relied on case law, decided prior to the effective date of the 2013 Workers' Compensation Reform Act, which discussed whether an activity resulting in injury "bears a reasonable relationship to the employment." Noting that Professor Lex Larson has espoused the idea that "[c]ompensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee," the trial court concluded that "an employee who is leaving the premises of an employer immediately after terminating her employment remains in the course and scope of her employment for a reasonable time thereafter." Employer timely filed its notice of appeal.

**Standard of Review**

The standard of review to be applied by this Board in reviewing a trial court's decision is statutorily mandated and limited in scope. Specifically, "[t]here shall be a presumption that the findings and conclusions of the workers' compensation judge are correct, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-239(c)(7) (2014). The trial court's decision must be upheld unless the rights of a party "have been prejudiced because findings, inferences, conclusions, or decisions of a workers' compensation judge:

3

(A)     Violate constitutional or statutory provisions;
(B)     Exceed the statutory authority of the workers' compensation judge;
(C)     Do not comply with lawful procedure;
(D)     Are arbitrary, capricious, characterized by abuse of discretion, or clearly an unwarranted exercise of discretion;
(E)     Are not supported by evidence that is both substantial and material in the light of the entire record."

Tenn. Code Ann. § 50-6-217(a)(3) (2015). Like other courts applying the standards embodied in section 50-6-217(a)(3), we will not disturb the decision of the trial court absent the limited circumstances identified in the statute.

## Analysis

### *Tennessee Statutes and Cases from Other Jurisdictions*

It is well-settled that an injured worker has the burden of proof on every essential element of his or her claim. Tenn. Code Ann. § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co.*, No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015). Not surprisingly, this includes the requirement that an injured worker prove the existence of an employment relationship. *See, e.g., Shane v. Equitable Life Assurance Soc.*, 118 S.W.2d 570, 573 (Tenn. Ct. App. 1938) ("[T]he burden of proof to show that the total and permanent disability occurred while she was an employee . . . is on the plaintiff."). However, at an expedited hearing at which pre-trial benefits are at issue, an employee need not prove every element of his or her claim by a preponderance of the evidence but must come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits consistent with Tennessee Code Annotated section 50-6-239(d)(1) (2014). *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). This lesser evidentiary standard "does not relieve an employee of the burden of producing evidence of an injury by accident that arose primarily out of and in the course and scope of employment at an expedited hearing, but allows some relief to be granted if that evidence does not rise to the level of a 'preponderance of the evidence.'" *Buchanan*, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *6.

The critical issue in this appeal is whether Tennessee law supports the trial court's conclusion that an injured worker who terminated the employment relationship prior to the injury "remains in the course and scope of her employment for a reasonable time thereafter." This premise, which serves as the foundation of the trial court's order, has been recognized by at least one prominent workers' compensation scholar as well some courts in other jurisdictions.

4

As noted by the trial judge, Professor Lex K. Larson, an oft-cited authority on workers' compensation principles, observed that "[c]ompensation coverage is not automatically and instantaneously terminated by the firing or quitting of the employee." 2 Lex K. Larson, *Larson's Workers' Compensation* § 26.01 (2012). In a recent text, Professor Larson cited a Maryland case, *Nails v. Market Tire Co.*, 347 A.2d 564 (Md. Ct. App. 1975), in support of this proposition. Lex K. Larson & Arthur Larson, *Workers' Compensation Law: Cases, Materials and Text* § 8.07 (4th ed. 2008). In *Nails*, an employee was terminated for allegedly recommending repairs to a customer's car that were unnecessary. *Nails*, 347 A.2d at 564. Two days later, the ex-employee returned to retrieve personal tools, which the employer had required him to provide as an incident of his employment. While lifting the tools, he allegedly injured his back. In holding that the employee was entitled to seek workers' compensation benefits, the Maryland court reasoned that "[w]hether an accident causing an injury to an employee results from some obligation, condition or incident of the employment depends upon the circumstances of each particular case." *Id.* at 567. Moreover, and critical to our analysis here, the court expressly stated, "[t]he Workers' Compensation Act should be construed as liberally in favor of the injured employees as its provisions will permit in order to effectuate its benevolent purposes." *Id.* The court then concluded that "if the employee sustained an accidental injury as alleged, it arose out of and in the course of his employment." *Id.* at 567-68.

Other jurisdictions have reached similar results. *See, e.g., Cook v. AFC Enters., Inc.*, 826 So. 2d 174 (Ala. 2002) (employee injured in an altercation with co-workers soon after termination cannot sue her employer in tort since the employer is protected by the exclusive remedy provisions of the workers' compensation law); *Johnson v. Safreed*, 273 S.W.2d 545 (Ark. 1954) (terminated employee assaulted by a co-worker was awarded workers' compensation); *Price v. R&A Sales*, 773 N.E.2d 873 (Ind. Ct. App. 2002) (injury of terminated employee who fell down stairs while leaving employment premises occurred in the course of employment); *Leonhardt Enters. v. Houseman*, 562 P.2d 515 (Okla. 1977) (worker who quit and fell while leaving the premises was awarded benefits since an employee is deemed to be within the course of employment for a reasonable period while he finishes his affairs and leaves the premises).

On the other hand, courts in some jurisdictions have reached the opposite result. *See, e.g., Skelgas Co. v. Indus. Comm'n*, 79 N.E.2d 501 (Ill. 1948) (terminated employee killed in a motor vehicle accident while traveling home from a medical appointment necessitated by a prior work injury deemed not to be performing any service under any contract of hire); *Johnson v. Albia*, 212 N.W. 419 (Iowa 1927) (ex-employee injured while assisting a former co-worker while retrieving his personal tools after quitting his job was not an employee at the time of the accident); *Pederson & Voechting v. Indus. Comm'n*, 231 N.W. 267 (Wis. 1930) (employee's act of returning to the warehouse after termination to retrieve tools and clothes was not referable to his employment contract).

5

As this discussion illustrates, the states are divided on the issue presented in this appeal and, unfortunately, we have found no Tennessee case directly addressing the question. Regardless, it is necessary for us to analyze this issue in light of several critical principles embodied in the 2013 Workers' Compensation Reform Act. First, Tennessee courts may no longer apply a liberal or remedial interpretation of the statutes, but must apply the law "fairly, impartially, and in accordance with basic principles of statutory construction." Tenn. Code Ann. § 50-6-116 (2015). Also, the statutes "shall not be construed in a manner favoring either the employee or the employer." *Id.* Thus, those jurisdictions that decided the issue in the context of a statute mandating a liberal or remedial interpretation in favor of employees offer little or no guidance in the present case.

Second, the legislature has expressly defined the phrase "arises primarily out of and in the course and scope of employment" to mean that the injury is compensable "*only* if it has been shown by a preponderance of the evidence that the *employment* contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(14)(B) (2015) (emphasis added). Thus, a critical issue in this appeal is whether an employment relationship existed at the time of the injury. If no employment relationship existed, then it strains logic and common sense to conclude that the employment contributed more than fifty percent in causing the injury.

Third, the legislature has defined an "employee" to mean "every person . . . in the service of an employer . . . *under any contract of hire or apprenticeship, written or implied.*" Tenn. Code Ann. § 50-6-102(12)(A) (2015) (emphasis added). If only "employees" as defined in the workers' compensation law are eligible for workers' compensation benefits, then the critical issue, again, is whether the claimant was an "employee" at the time of the injury.

*Employee's Status at the Time of the Injury*

Because no evidentiary hearing was requested or conducted in this case, the trial court was limited to considering evidence in the form of affidavits and stipulated documents. It is well-settled that factual assertions made in a pleading are binding on the party making the assertion. *Aranjo v. Rich*, No. 01-A-01-9206-CH-00235, 1992 Tenn. App. LEXIS 892, at *7 (Tenn. Ct. App. Nov. 6, 1992) ("The pleadings . . . are conclusive evidence of the facts stated therein."); *Pankow v. Mitchell*, 737 S.W.2d 293, 296 (Tenn. Ct. App. 1987) ("Factual statements in pleadings are conclusive against the pleader in the proceedings in which they were filed until they have been amended or withdrawn."). However, arguments of counsel are not evidence. *See Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 86 n.3 (Tenn. 2008); *State v. Cribbs*, 967 S.W.2d 773, 784 (Tenn. 1998).

6

In her PBD, which is the Bureau of Workers' Compensation's equivalent of a complaint, Employee stated that she had "quit minutes before falling." The PBD listed no counsel of record and was signed by Employee. Even after Employee retained counsel, she continued to maintain that she had quit her job prior to the fall. For example, in her brief filed in the trial court, Employee framed a "narrow" issue for the trial court's consideration: "is an employee who has quit but is injured on the employer's premises passing from the place where work is done entitled to workers' compensation benefits." Similarly, in her brief on appeal, Employee asserts that she fell "exiting the premises immediately after quitting." Pursuant to well-established principles, this factual assertion is binding on Employee for purposes of this interlocutory appeal and, thus, the employer-employee relationship must be considered to have ended prior to the fall.[2]

The dissent argues that "the majority effectively concedes that the employee was in the course and scope of her employment prior to the fall." In actuality, the only act performed by Employee which could be considered to have occurred "in the course and scope of her employment" was clocking in. According to the affidavits, Employee declined to perform any work-related duty asked of her and was in the process of collecting her personal items and leaving when she announced she was quitting. An injury occurs in the course of employment "when it takes place *within the period of the employment*, at a place where the employee reasonably may be, *and while the employee is fulfilling work duties or engaged in doing something incidental thereto*." *Blankenship v. Am. Ordnance Sys., LLC*, 164 S.W.3d 350, 354 (Tenn. 2005) (citing 1 Lex K. Larson, *Larson's Workers' Compensation Law* § 12 (2004)) (emphasis added).[3]

Tennessee courts have long recognized that the Workers' Compensation Law does not render an employer "an insurer against every accidental injury . . . occurring during employment." *Scott v. Shinn*, 105 S.W.2d 103, 105 (Tenn. 1937). More than mere presence at the place of injury as a result of the employment relationship is required for

---

[2] We note that the record contains evidence that arguably calls into question whether the employment relationship had ended at the time of the fall. Both the affidavits of Employee and Jason Stanford indicate that Employee stated she "was quitting" just prior to the fall. This phrase could imply a contemporaneous act, or it could imply an act soon to occur. Regardless, it is undisputed that Employee had clocked in prior to the fall but had not clocked out at the time of the fall. Employee alleges that she texted the store manager after the fall to tell him she had quit. The store manager did not indicate he received that text, but noted in his affidavit that Employee failed to appear for her shifts the following two days and did not call in, contrary to company policy. This affidavit raises questions as to when Employer actually considered Employee to have quit. Further, it can be inferred from the record that Employee had not been paid her final wages at the time of her fall. Nevertheless, since neither party raised as an issue the sufficiency of the evidence regarding her employment status at the time of the fall, it would be inappropriate for us to consider the issue at this time.

[3] Interestingly, Professor Larson noted that even when deciding what constitutes a reasonable time after termination, "the issue . . . may turn on the question of what the employee was doing during the interval before leaving the premises, and whether that activity bore any relation to the employment or was purely personal." *Larson's Workers' Compensation Law* at § 26.01.

7

an injury to arise out of and in the course and scope of employment. *See, e.g., Padilla v. Twin City Fire Ins. Co.*, 324 S.W.3d 507, 515 (Tenn. 2010). Thus, the record on appeal does not support the contention that Employee was performing work duties or engaged in something incidental thereto immediately prior to her fall. To the contrary, she had refused to engage in her work duties and announced she was quitting prior to her fall.

In short, we find that the trial court was incorrect in concluding that Employee is likely to prevail at a hearing on the merits of the claim. Employee stated in her PBD that she quit her job before the fall and reiterated this position in her arguments in both the trial court and on appeal. Based on this admission, it logically follows that the "employment" could not have contributed more than fifty percent in causing the injury since the employment relationship had ended prior to the fall. Moreover, based on Employee's admission, she was not, in fact, an "employee" within the meaning of Tennessee Code Annotated section 50-6-102(12)(A) at the time of the fall. Given the impartial construction of the statutes that must be applied in this case, we hold that the evidence preponderates against the determination of the trial judge at this stage of the case.

## Conclusion

We find that the evidence was insufficient for the trial court to determine that Employee is likely to prevail at a hearing on the merits. We therefore reverse the trial court's order and remand the case for further proceedings as necessary.

Timothy W. Conner, Judge
Workers' Compensation Appeals Board

8

**FILED**

**January 21, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 3:00 P.M.



# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Melissa Duck                                  )   Docket No.  2015-07-0089

                                          )

v.                                          )

                                          )   State File No.  37887-2015

Cox Oil Company                             )

                                          )

                                          )

Appeal from the Court of Workers'      )

Compensation Claims                 )

Allen Phillips, Judge                  )

---

## Dissenting Opinion – Filed January 21, 2016

---

David F. Hensley, dissenting.

I respectfully disagree with the majority's conclusion that the resolution of this case is dependent on whether the employee had terminated the employment relationship at the time of her injury.

The trial court concluded that an employee who is leaving an employer's premises immediately after terminating the employment relationship remains in the course and scope of the employment for a reasonable time thereafter. The trial court found that "walking out of the employer's premises immediately after quitting the employment [as the trial court found the employee did in this case] constitutes a reasonable period." Determining that the employee would likely prevail at a hearing on the merits in establishing a work-related injury, the trial court ordered the employer to provide medical treatment for the injuries the employee suffered when she slipped in water and fell as she was leaving the employer's premises.

The majority reverses the trial court, concluding that based on the employee's admission that she quit her job before the fall "the employer-employee relationship must

1

be considered to have ended prior to the fall." Noting that Tennessee Code Annotated section 50-6-102(14)(B) provides that an injury "'arises primarily out of and in the course and scope of employment' *only* if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury," the determinative question, as stated by the majority, is "whether an employment relationship existed at the time of the injury." (Emphasis added). Based on the employee's admission that she quit her job before her fall, the majority concludes that "it logically follows that the 'employment' could not have contributed more than fifty percent in causing the injury since the employment relationship had ended prior to the fall."

In my view, section 50-6-102(14)(B) does not require a "contract of hire" at the time of injury as contemplated in the definition of "Employee" in section 50-6-102(12)(A). It requires that for an injury to "arise[] primarily out of and in the course and scope of the employment," the preponderance of the evidence must show that the employment contributed more than fifty percent in causing the injury. In my opinion, the evidence in this case does not suggest any cause of the injury other than the dangers and hazards inherent in the employment. The employee reported to work, clocked in, and was having "a conversation with [her] supervisor . . . about the duties he wished [her] to perform that day," when the disagreement with her supervisor surfaced. The majority suggests that the only act performed by the employee that could have been considered "in the course and scope of her employment" was "clocking in." Tennessee has long held that "a worker who is on the employer's premises coming to or going from the actual work place is acting in the course of employment." *Lollar v. Wal-Mart Stores, Inc.*, 767 S.W.2d 143, 150 (Tenn. 1989). While extending "the course of employment" to include the period of time from a worker's arrival at the employer's premises until the worker leaves the premises may have had its genesis in the remedial policies embraced prior to the passage of the 2013 Workers' Compensation Reform Act, in my opinion neither section 50-6-102(14)(B) nor section 50-6-116 (2015) mandates that injuries occurring in "the course and scope of the employment" be limited to injuries occurring after a worker has begun to perform work duties or exclude injuries occurring after completion of the work duties but before the worker has left the employer's premises.

The majority effectively concedes that the employee was in the course and scope of her employment prior to the fall, but concludes that the employment could not have contributed to the fall due to the employee's announcement immediately before the fall that she "was quitting." I cannot agree that the employee's utterance removed her from the course and scope of her employment. While it may, as stated by the majority, "strain[] logic and common sense to conclude that the employment contributed more than fifty percent in causing the injury" if no employment relationship existed when the employee fell, the fallacy I find in the majority's logic is equating "the employment" included in section 50-6-102(14)(B) with "in the service of an employer . . . under a[] contract of hire" as contemplated in section 50-6-102(12)(A). Neither the parties nor the

2

majority question whether the employee was in the service of the employer under a contract of hire as contemplated in section 50-6-102(12)(A) immediately before the fall and immediately prior to announcing that she "was quitting."

Further, it was not the employee's mere presence at the workplace at the time of her injury that leads me to conclude that the result reached by the trial court is correct. To be compensable, an injury must result from a danger or hazard peculiar to the work or be caused by a risk inherent in the work. *Connor v. Chester Cnty. Sportswear Co.*, No. W2001-02114-WC-R3-CV, 2002 Tenn. LEXIS 448 (Tenn. Workers' Comp. Panel Oct. 18, 2002). Walking in the convenience store presented risks inherent in the employee's work. The weekly cleaning of the ice cream freezer and the resulting water on the floor in the vicinity of the freezer, as addressed by the supervisor in his affidavit and confirmed by the employee, was a hazard incident to the employee's work.

Lastly, I do not believe that the language or the legislative intent in section 50-6-102(14)(B) contemplates an automatic and instantaneous termination of workers' compensation benefits upon an employee's announcement that he or she is "quitting." This is consistent with the general principle expressed in 2 Lex K. Larson, *Larson's Workers' Compensation* § 26.01 (2012), and is not dependent on a remedial or liberal interpretation of the Workers' Compensation Act as proscribed by Tennessee Code Annotated section 50-6-116. There is no dispute in this case that when the employee entered the workplace a very short time before her fall she was "in the service of an employer . . . under a[] contract of hire" as contemplated in section 50-6-102(12)(A) and was "in the course and scope of [her] employment" as contemplated in section 50-6-102(14). In my opinion, the employee in this case continued in the course of her employment immediately after stating she "was quitting" and at the time of her injury very soon thereafter. Accordingly, I would affirm the result reached by the trial court under the facts and circumstances presented.

_____
**David F. Hensley, Judge**
**Workers' Compensation Appeals Board**

3



**FILED**

**January 21, 2016**

TENNESSEE
WORKERS' COMPENSATION
APPEALS BOARD

Time: 3:00 P.M.



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

Melissa Duck           )   Docket No. 2015-07-0089

v.                     )

                       )   State File No. 37887-2015

Cox Oil Company      )

### CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 21st day of January, 2016.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Email Address |
|---|---|---|---|---|---|---|
| **Charles L. Holliday** | | | | | X | chuckh@garretylaw.com |
| **Colleen K. Horn** | | | | | X | chorn@wimberlylawson.com |
| **Allen Phillips, Judge** | | | | | X | Via Electronic Mail |
| **Kenneth M. Switzer, Chief Judge** | | | | | X | Via Electronic Mail |
| **Penny Shrum, Clerk, Court of Workers' Compensation Claims** | | | | | X | Penny.Patterson-Shrum@tn.gov |

Matthew Salyer
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: Matthew.Salyer@tn.gov