No. 19,662.

Empire Diesel, Inc. *v.* William V. Brown.

(361 P. [2d] 964)

Decided May 15, 1961.

Mr. BLAISE J. JACOBUCCI, Mr. DONALD W. MARSHALL, for plaintiff in error.

Messrs. CADDES AND CAPRA, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MOORE.

SEPTEMBER 9, 1957, plaintiff in error Empire Diesel, Inc., to whom we will refer as Empire, was organized as a Colorado corporation and its authorized shares were issued — 1,000 to Walter K. Clark, and 1,000 to others. The corporation conducted a diesel repair shop. On December 17, 1958, Jerome Clay acquired a portion of the stock, and purchased the remaining shares on January 20, 1959. Thereafter the stock was held 999 shares by Clay, 1000 shares by his wife, and 1 share by one Pieratt.

Defendant in error Brown, a diesel mechanic, was employed at the place of business from November 1957 to October 1958, at a stipulated hourly wage with time and a half for overtime, and as part of his compensation his Blue Cross and Blue Shield premiums were to be paid by Empire.

March 3, 1959, Brown filed his complaint naming Empire and W. K. Clark as defendants. In a first claim he sought $953.60 for wages, attorneys' fees and Blue Cross premiums for the last three months of his employment. The second claim is directed to Clark alone and was dismissed. A third claim seeks judgment on two loans allegedly made by Brown to Empire aggregating $500.00. Brown had judgment for these amounts except that the

wage claim was reduced to $853.60 to allow for a later credit.

Clark filed an answer but did not appear at the trial and is not a party here.

Although the business volume was considerable, the concern did not prosper and was delinquent from time to time in the payment of wages. Brown determined to keep his own record of his earnings and payments thereon.

Over Empire's objection the trial court received in evidence Exhibit A consisting of several sheets of paper which set forth, week by week from July 5, 1958, to October 11, 1958, Brown's base pay, his overtime and the payments made to him on account by Empire. As the account accrued entries were made by Mrs. Brown at Brown's direction. The account so kept is legible and readily understandable. No balance is computed, but the amount of the judgment based thereon is not questioned.

When the exhibit was offered counsel for Empire objected as follows:

"Defendant, your Honor, objects to the admission of Exhibit A, the purported record as being based, at best, on hearsay statements and self-serving declarations made by plaintiff to his own wife. That certainly does not meet the requirements for a record made in the regular course of business of original entries in that sort of record."

The objection was overruled and this ruling is assigned as error.

That the entries were "original" is patent; no other entries or records were made. That the accounting reflected hearsay statements is no ground for its rejection. Books of account frequently, in fact usually, are kept by the scrivener in large part from information supplied. That they were self-serving declarations requires little comment. Any such record showing a favorable balance is self-serving. Certainly Exhibit A is not self-serving as to the ten credit entries, payments by

Empire to Brown, aggregating more than $1200.00. Here as below, counsel for Empire objects that the entries were not "in the regular course of business," but the record discloses nothing which tends to remove them from that classification. The business and its regular course were Brown's employment by Empire and the payment of his wages. The exhibit was identified and verified by both the Browns. No particular form in which a record is kept and no special skill on the part of the bookkeeper is required to bring such records within the exception to the hearsay rule. 20 Am. Jur. sec. 1061, p. 907. The exhibit is not inherently incredible, the items and computations are not questioned, it was intended to and did supply an accounting of transactions too numerous and complex to be committed to memory. Without detailing the essential requirements we find that Exhibit A comes within the well known exception to the hearsay rule permitting the introduction in evidence of business records. The trial court regarded it as competent. No error resulted from this ruling.

Two loans for $200.00 and $300.00 respectively were made under identical circumstances. In each case a truck was in the shop for repairs and parts were needed to complete the work. Empire was without cash and unable to purchase such parts on credit. Only on completion of the repairs was payment for the jobs to be expected. Clark, Empire's president and manager, requested the loans from Brown and upon consummation thereof the parts were obtained and installed in the vehicles. Mrs. Brown signed the checks, and the payee named therein in each case was Clark. The checks were endorsed by Clark and Empire and reached Empire's account in the bank.

It is urged that they were loans to Clark individually and not to Empire. To further support this claim Brown's testimony describing the transactions is emphasized, in that he made use of personal pronouns in referring to Clark and himself. He also mentioned Clark

by name. He explained that Clark was solely in charge of the business and that the other stockholders were not active except for an occasional visit and that no thought was given to a distinction between Clark and the corporation as referring to separate entities. This was but natural, to Brown Clark was the corporation and the corporation was Clark. Under such circumstances it is a permissible, if not necessary, inference that the loans were made to the corporation.

Empire claims accord and satisfaction based on a check for $250.00. Following purchase of the corporate stock by Clay, Clark stayed on at the shop, apparently in preparation for his own withdrawal and Clay's entry as sole manager. Clark disappeared, taking with him, as Clay testified, most of the books and records of the corporation including payroll and financial records. Clay had demanded of Clark a list of the outstanding indebtedness, but with the books thus unavailable he was unable to verify anything at the trial. Following Brown's departure Clay employed an accountant who, independently of the missing records, determined the various outstanding obligations of Empire and concluded that Brown was entitled to $250.00. The accountant died and, as Clay testified, he was unable to find at his home or elsewhere the worksheets and supporting data on which he based his conclusions. Except for Clay's testimony as to the accountant's findings, there is nothing to support the claim that $250.00 was the balance owing Brown.

Brown called at the shop and demanded his pay and was offered $250.00 by Clay. He declined to accept it and consulted the Labor Board who advised him to employ an attorney and also to take what he could get. Clay had told him to see Clark about his balance, but Brown was unable to find Clark. He returned and asked for and received the check for $250.00, but he was "afraid to cash the check" and consulted with attorneys. The check is in the usual form, merely an order on the

bank to pay the money, and on the back thereof, added by Clay himself, is the following:

"Endorsement constitutes payment in full for all wages and any other claims against the company and the maker of this check."

Note that it is "endorsement" and not mere receipt of the check which constitutes "payment in full." It was never endorsed by Brown, but was retained and produced at the trial and offered in evidence by Empire.

Cases are cited holding that retention of a check reciting full payment for an unreasonable length of time amounts to a settlement whether cashed or not. No authority is cited where a check substantially like the one in question is considered.

In *Smith-McCord-Townsend Company v. Camenga,* 104 Colo. 7, 87 P. (2d) 751, the check under consideration bore the words "acct. in full." It was dated September 9, 1935, endorsed by payee on September 11 and cancelled and paid by the bank on September 13th. On September 25 payee wrote the maker asking for interest on his claim. The court recites that "two weeks was an unreasonable length of time to delay making any objection or protest." This language is emphasized in Empire's brief. But the court continued as a part of the same sentence, "if the check were not to be accepted for what it purported to be." The Clay check purports to be payment in full only *upon endorsement,* hence the cited case is inapplicable. It is further dissimilar in that the payee there did in fact endorse the check and receive the proceeds. The Clay check was at most an offer of settlement, the offer to be accepted by "endorsement." With the legal effect of the check thus narrowed by its terms, acceptance and retention of the check is not significant.

The Blue Cross premiums for the last three months of Brown's employment were not paid by Empire. Brown testified, "I had to go down town and pay it myself." Mrs. Brown testified that "the amount [of the Blue

Cross payments] was * * * $48.80 — but I don't remember the cents." Although a check to Blue Cross was mentioned by Mrs. Brown and there was objection that this "was not the best evidence" there was, independently of the check, evidence to support the court's finding and allowance of this item.

█ Reversal is asked by Brown because of the refusal of the court to grant counsel fees. C.R.S. '53, 80-10-7, authorized allowance of a reasonable fee in a suit for wages by an employee. This statute was repealed in its entirety by chapter 167, page 537, Laws of 1959, subsequent to the time Brown's claim had accrued. By C.R.S. '53, 135-1-7, repeal of a statute does not modify or extinguish any liability incurred under the repealed statute, unless expressly so provided. Chapter 167, Laws of 1959, contains no such provision. With Brown's right to counsel fees at least prima facie valid the trial court was not warranted in disallowing the claim.

The judgment is affirmed in part and reversed in part, and remanded for further proceedings.

Mr. Justice Sutton and Mr. Justice Day concur.