**C. L. TYRRELL, as Trustee of the Estate of Roy E. Shoaff Drilling Co., Inc., Bankrupt, Plaintiff,**

v.

**DOBBS INVESTMENT CO. (formerly known as Dobbs G M Diesel, Inc.) and Yellow Manufacturing Acceptance Corporation, Defendants.**

**Civ. A. No. 7590.**

United States District Court
D. Colorado.

Jan. 20, 1966.

Dawson, Nagel, Sherman & Howard, Denver, Colo., for plaintiff.

Hodges, Silverstein & Harrington, Denver, Colo., for defendant Dobbs Inv. Co.

**WILLIAM E. DOYLE, District Judge.**

This is a plenary suit by the Trustee in Bankruptcy of Roy E. Shoaff Drilling Company, seeking to recover the value of two Diesel engines which had been supplied by Dobbs Investment Company, allegedly to the bankrupt.

The suit demanded certain payments which had been made by the Shoaff Drilling Company to defendant but these have been disposed of at a previous trial to a jury. This matter has been before the Court of Appeals for the Tenth Circuit, 337 F.2d 761, which Court determined that the security instrument issued in connection with the sale of the two engines was perfected on April 19, 1960. Inasmuch as this conclusion was at variance with an order of this Court dismissing the instant claim prior to trial, the cause was remanded for further proceedings. Thus it is now presented for the purpose of determining: First, whether there was a sale to the bankrupt company; and secondly, if there was a sale, whether the repossession of the engines by Dobbs constituted a voidable preference.

In the matter before the Court on defendant's motion for summary judgment both sides conceded that the facts are undisputed and following oral arguments submitted the case for decision.

In order to determine whether the Dobbs Company sold the engines in question to the Roy E. Shoaff Drilling Company it is necessary to examine the circumstances surrounding this sale. It all started on Saturday morning, March 19, 1960, when Larry Dobbs, President of Dobbs GM Diesel Company, received a telephone call from a Mr. Goodwin of the Mid-Continent Supply Company, informing Dobbs that Roy Shoaff was in desperate need of two Diesel engines which Mid-Continent was unable to supply. He explained that an engine on Shoaff's oil rig, located in Kimball, Nebraska, had broken down and as a result the entire operation was threatened and a loss of valuable pipe was likely. Dobbs and Goodwin had had prior dealings, and although he had not had previous contact

with Roy Shoaff, Dobbs responded to Goodwin's appeal. Later that morning, when Roy Shoaff visited Dobbs he agreed to sell Shoaff the two engines. He made out a sales slip and immediately proceeded to arrange for shipment and installation of the engines. Due to his having given the matter immediate attention, the pipe was salvaged and the drilling operation was able to continue. The sales slip was made out to Roy E. Shoaff.

At the time of the sale Dobbs was unaware of the existence of the corporation; in fact, he did not discuss credit terms with Shoaff, nor did he inquire about his ability to pay. He had been told by Goodwin that Mid-Continent owned a mortgage on the rig and had done business with Shoaff for some time. He did not become aware of the fact that the rig was owned by the drilling company until the following week when financial arrangements were being made. Indeed, Dobbs assumed that Mid-Continent would handle the financing, but Mid-Continent refused to assume the burden as a result of the refusal of Dobbs to grant a discount and thus give Mid-Continent a profit.

As a result, the Yellow Manufacturing Acceptance Corporation undertook the financing. Dobbs had nothing to do with the details. Financial information was obtained by Yellow from Shoaff. The information obtained showed that Shoaff was in good financial condition. A credit check showed that the drilling company's net worth was minus $60,000.00. The net worth of Roy Shoaff was $85,-000.00. Thus, the chattel mortgage was signed by Roy Shoaff on March 23, 1960. It was assigned to Yellow Manufacturing Acceptance Corporation on March 30, 1960. As indicated, the Court of Appeals found that this instrument was perfected on April 19, 1960.

It is significant that the consent of the drilling company and its mortgagee, Mid-Continent, was obtained so as to install the engines on the rig.

Inter-office Yellow Manufacturing Acceptance Corporation correspondence showed that that company definitely intended to deal with Shoaff personally.

Roy Shoaff testified that although he had no personal use for the engines, he nevertheless often purchased goods for use by the corporation in his name and also often made personal guarantees. The Dobbs Company showed the account on its books as "Shoaff Drilling." Monthly statements were in various forms, including Roy Shoaff Drilling, Shoaff Drilling, Roy E. Shoaff Drilling, and Roy E. Shoaff Drilling Company. A Dobbs Company cost copy form dated March 29 reflects that two engines were sold to Roy E. Shoaff. Dobbs testified that he considered his dealings to have been with Mr. Shoaff personally and that after seeing the combined financial statements he assumed the deal was with a solvent individual. Nevertheless, the payments on the engines were made by checks of the drilling company. These are the same checks which were dealt with in the first trial, wherein it was apparently held that Dobbs was entitled to the money even though the drilling company did not buy the engines since they had used them and the amounts paid did not exceed the value which had accrued to the drilling company.

In June, 1960, Mid-Continent took possession of the rig and the engines and notified Mr. Dobbs of this fact. At his request the engines were forwarded to the Dobbs yard at Fort Morgan, Colorado. Later, they were transferred to Denver and sold at a foreclosure sale. Their stipulated value at the time herein pertinent was $15,250.00; the amount then due on the security instrument was $16,986.00.

I.

 Plaintiff has the burden of proving that the sale was to the drilling company. See Moran Bros. Inc. v. Yinger, 10 Cir. 1963, 323 F.2d 699. From an examination of the undisputed facts we conclude that the evidence does not support the plaintiff's contention that the drilling company was the purchaser. The dealings were between Dobbs and

Roy Shoaff personally. Indeed, the seller was not even aware of the drilling company as such. The contract was signed by Shoaff. The financing was in the name of Shoaff and every other surrounding circumstance supports the conclusion that this was the intention. The only circumstance in support of plaintiff's argument that it was a sale to the drilling company is found in the statements which were submitted by Dobbs. Even here the words "Shoaff Drilling" must be regarded as ambiguous and not as supporting plaintiff's view. The fact that Shoaff did not personally use the engines adds little weight since it appears from the record that he often dealt personally. There is also evidence that after the repossession Shoaff telephoned a request to Dobbs that the engines be held for him.

Nor do we find any merit in the contention that Shoaff and the drilling company must be deemed identical. Shoaff himself made the distinction in the course of the purchase and in the course of obtaining the financing. The other parties made the distinction when the consent form was executed for the installation of the engines. Even if it were to be concluded that Shoaff was some kind of an agent for the drilling company, he would nevertheless be personally liable because his agency was not disclosed. Nor are we able to find substantial evidence that there was a third party beneficiary contract in which Shoaff and the drilling company acted for Dobbs as beneficiary. There is a shortage of evidence to establish any such theory. Moreover, it is factually incompatible with our holding that the only contract was one between Dobbs and Shoaff personally.

The cases cited in support of plaintiff's position, Empire Diesel, Inc. v. Brown, 146 Colo. 477, 361 P.2d 964 (1961) and Matter of Eton Furniture Co., 3 Cir. 1961, 286 F.2d 93, are not controlling in the context here presented. In Empire Diesel the loans were deemed to have been made to the corporation rather than to an officer thereof in view of the vendor's intimate knowledge of the corporation. In Eton the evidence supported the finding of the referee and of the district court that all the parties understood from the beginning that the debts in question had been incurred by the company. Here, the contrary is true. All parties looked to Roy Shoaff personally.

## II.

In view of our finding that the sale was to Shoaff rather than to the drilling company, we need not consider plaintiff's argument that the Court of Appeals decision is ambiguous concerning the date the security instrument was perfected as against the drilling company. Nor need we reach the second question; that is to say, whether there was a voidable preference under Section 60(b) of the Bankruptcy Act. Were we, however, to decide this issue, we would be constrained to hold against the plaintiff on this also. The evidence appears to be insufficient to support the contention that Dobbs had reasonable cause to know the drilling company was insolvent at the date of perfection. The fact that the initial check was dishonored would not be a basis for a holding that sufficient cause existed for Dobbs Company to know of the drilling company's insolvency at the time of the sale. Cf. Moran Bros. Inc. v. Yinger, supra. Other than this one fact there is a dearth of evidence in support of the plaintiff's argument. The fact that the industry may have been somewhat distressed at the time would not fill the bill; nor would the fact that Mid-Continent refused to finance the transaction be sufficient in view of Mid-Continent's reason, heretofore mentioned. For the reasons stated, it is

Ordered that the motion of defendant for summary judgment should be, and the same is hereby granted. Counsel for defendant is directed to prepare an appropriate judgment and submit the same to counsel for plaintiff for approval as to form. It should be submitted to the Court in the next few days.